UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

BANKUNITED FINANCIAL
CORPORATION, BANKUNITED
FINANCIAL SERVICES, INC., CRE
AMERICA CORPORATION, and
BU REALTY CORPORATION,

      Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as receiver
of BankUnited, FSB,

      Defendant.

_____/

## COMPLAINT

Plaintiffs BankUnited Financial Corporation ("**BUFC**"), BankUnited Financial Services, Inc. ("**BUFS**"), CRE America Corporation ("**CRE,**" and together with BUFC and BUFS, the "**Debtors**"), and BU Realty Corporation ("**BU Realty**," and together with the Debtors, the "**Plaintiffs**") sue defendant the Federal Deposit Insurance Corporation, in its capacity as receiver for BankUnited, FSB ("**FDIC-Receiver**"), and allege the following:

## NATURE OF ACTION

1.    This is a civil action seeking the determination and allowance of claims filed by the Plaintiffs in the Receivership (as defined below) of BankUnited, FSB ("**BUFSB**"); demanding an accounting of the disposition of assets of the Receivership and of all property transferred from Plaintiffs in connection with the Receivership; and demanding that the FDIC-Receiver call a meeting of the shareholders of BUFSB to determine whether the FDIC-Receiver

shall continue and wind up the affairs of BUFSB, or whether an agent shall be elected for that purpose.

## PARTIES

2.     BUFSB was a federally chartered savings and loan association and wholly-owned subsidiary of BUFC, with its principal place of business in Coral Gables, Florida.

3.     BUFC is a former unitary savings and loan holding company of BUFSB, incorporated in the State of Florida and formerly headquartered in Coral Gables, Florida.

4.     BUFC is also the 100% owner of (i) CRE, which holds a timeshare interest in certain real property located in New York City; (ii) BUFS, which was organized in 1997 for the purpose of selling annuities, mutual funds and other insurance and securities products; and (iii) BU Realty, which was organized in 2007 to conduct certain real estate activities.

5.     FDIC-Receiver is the receiver for BUFSB.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this civil action pursuant to 12 U.S.C. §§ 1819(b)(2)(A) and 1821(d)(6), and 28 U.S.C. §§ 1331 and 1334.

7.     Venue is proper in this judicial district under 12 U.S.C. § 1821(d)(6) and 28 U.S.C. §§ 1391(e) and 1409.

## BACKGROUND

8.     On May 21, 2009 (the "**Receivership Date**"), the Office of Thrift Supervision (the "**OTS**") closed BUFSB and appointed the FDIC-Receiver as its receiver.

9.     Immediately after the closure of BUFSB and the appointment of the FDIC-Receiver as receiver for BUFSB, the FDIC-Receiver and the Federal Deposit Insurance Corporation, in its corporate capacity ("**FDIC-Corporate**," and together with FDIC Receiver, the "**FDIC**") entered into a Purchase and Assumption Agreement with BankUnited, a de novo

federal savings association organized under the laws of the United States and having its principal place of business in Coral Gables, Florida ("**New Bank**"), for the purchase of substantially all of BUFSB's assets.

10.     BUFC, BUFS, and CRE, then each filed petitions under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") at 12:05 a.m., 12:31 a.m., and 12:43 a.m., respectively, on May 22, 2009 (the "**Petition Date**"), in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**").

11.     The automatic stay of 11 U.S.C. § 362(a) in the Debtors' bankruptcy cases prohibits any entity, including the FDIC and New Bank from, among other things, taking any action to obtain possession of property of the Debtors' bankruptcy estates or to exercise control over such property.

12.     On November 16, 2009, the FDIC-Receiver filed separate proofs of claim in each of BUFC, BUFS, and CRE's bankruptcy cases, as claims No. 103, 6, and 1, respectively, each of which appear identical in all material respects (collectively, the "**FDIC Proof of Claim**").  The FDIC Proof of Claim was in an "unliquidated amount," but which the FDIC-Receiver asserted it believes will be "in excess of $4.9 billion."

## THE PROOF OF CLAIMS

13.     Pursuant to 12 U.S.C. § 1821(d), the FDIC-Receiver set August 27, 2009 as the last day to file claims against the BUFSB Receivership (the "**Receivership**").  As described in detail below, Plaintiffs asserted claims against the Receivership (each a "**Claim**") by filing a Proof of Claims on August 27, 2009 (the "**Proof of Claims**") with the FDIC-Receiver.

14.     Plaintiffs reserved all rights to amend and/or supplement the Proof of Claims at any time and in any respect and to assert any and all other claims of whatever kind or nature that they have, or may have, against BUFSB (this includes but is not limited to, the Reservation of

Rights set forth on pages 3-5 of the Proof of Claims).  Plaintiffs likewise reserve all rights to amend and/or supplement this Complaint under the Federal Rules of Civil Procedure.

15.     The Claims are unsecured, unless otherwise noted, and except to the extent that the FDIC-Receiver asserts claims against the Plaintiffs.  To the extent of any such claims asserted by the FDIC-Receiver, Plaintiffs assert that the Claims asserted hereunder are secured.

16.     From and after the Receivership Date, nearly all of the Plaintiffs' books and records have been in the exclusive possession of the FDIC-Receiver and other federal regulatory agencies or New Bank.  The FDIC-Receiver has seized and continues to hold many of the records which are indispensable for a comprehensive assertion of, and the evidentiary support necessary to sustain, the Claims.  In addition, by letter dated August 25, 2009, New Bank advised the Plaintiffs that certain of the documents and information that the Plaintiffs had requested from New Bank would not be made available to the Plaintiffs until after August 27, 2009 – the deadline for filing the Proof of Claims.  The records the Plaintiffs have managed to obtain – even in the months between the Proof of Claims bar date and the date of filing this Complaint – have been for the most part incomplete and occasionally inconsistent.  As a result, the Plaintiffs have been unable to conduct the type of exhaustive research and analysis necessary to identify and support with sufficient documentation all of their Claims.

A.     **Use of Real Property**

17.     CRE owns an interest in real property located in New York City, New York.  BUFSB and its employees, officers, or directors, may have used CRE's property without compensation to CRE.

18.     BUFC, BUFS, and BU Realty may have had ownership, leasehold, or other interests in other real property.

19.     BUFSB and its employees, officers, or directors, may have used the respective real property of BUFC, BUFS, and/or BU Realty, without compensation to BUFC, BUFS, and/or BU Realty.

20.     Plaintiffs demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 1 to the Proof of Claims.

**B.      Unpaid Fees and Commissions**

21.     BUFS is due fees and commissions under that certain Financial Institution Services Agreement dated, March 8, 2008, between BUFSB, BUFS, LPL Financial Corporation and UVEST Financial Services, as to which BUFSB has received payment.  BUFSB is liable to BUFS for such fees and commissions.

22.     BUFSB is due fees and commissions under that certain Referral Agreement dated May 5, 2008 between R.E. Lee International (Cayman) Ltd., BUFSB and BUFS, as to which BUFSB has received payment.  BUFSB is liable to BUFS for such fees and commissions.

23.     BUFS demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 2 to the Proof of Claims.

**C.      Enterprise Value of BUFS**

24.     BUFSB usurped and may have assigned or attempted to assign the enterprise value of BUFS for its own benefit.  BUFSB is liable to BUFS for such enterprise value.

25.     BUFS demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 3 to the Proof of Claims.

**D.    Intellectual Property Use**

26.     Plaintiffs are the owners of certain intellectual property, including without limitation, trademarks, service marks, trade names, trade secrets, copyrights, patents,  and other intellectual property (the "**Intellectual Property**").

27.     BUFSB or its Receivership estate may have been using and may have assigned or attempted to assign certain of the Intellectual Property without paying compensation to Plaintiffs.

28.     Plaintiffs are entitled to compensation in connection with this use of the Intellectual Property.

29.     Plaintiffs demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 4 to the Proof of Claims.

**E.    Customer List Use**

30.     BUFS is the owner of certain customer lists and other proprietary trade information (the "**Customer Lists**").

31.     BUFSB or its Receivership estate has been using and may have assigned or attempted to assign certain of the Customer Lists without paying compensation to BUFS.

32.     BUFS is entitled to compensation in connection with this use of the Customer Lists.

33.     BUFS demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 5 to the Proof of Claims.

**F.    Guaranties**

34.     BUFC may have executed guaranties assuring third parties of the performance of various contracts or satisfaction of obligations by BUFSB and/or its subsidiaries.

35.     If BUFSB and/or its subsidiaries defaults on such contracts and/or obligations, BUFC may be liable to third parties as guarantor of such duties and/or obligations of BUFSB.

36.     BUFC, as guarantor, asserts its right of reimbursement, contribution, subrogation and exoneration against FDIC-Receiver in connection with any and all guaranties given by BUFC.

37.     BUFC demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 6 to the Proof of Claims.

**G.      Artwork and Other Personal Property**

38.     BUFC is the owner of a collection of artwork and other personal property (the "**Personal Property**").

39.     BUFSB or its Receivership estate may have been using certain of the Personal Property without paying compensation to BUFC.

40.     BUFC is entitled to compensation in connection with this use of the Personal Property.

41.     BUFC demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 7 to the Proof of Claims.

**H.      PAC**

42.     BUFC had established one or more political action committees (the "**PACs**"), including one known as the BankUnited Financial Corporation Political Action Committee (C00248310) (the "**BUFC PAC**"), which are "connected to" BUFC.

43.     The PACs, including the BUFC PAC, hold certain funds to which BUFC is entitled under applicable law.

44.     Upon information and belief, as of June 30, 2009, the BUFC PAC had a balance of $88,869.

45.     BUFC demands turnover under 11 U.S.C. § 542 (or, in the alternative, an equitable lien, constructive or resulting trust, or other legal or equitable remedy entitling BUFC to payment of 100% of its claim described above) in the amount of $88,869, plus other presently unknown dollar amounts in respect of the claim described above, as set forth in Attachment 8 to the Proof of Claims.

**I.     Employee Benefits**

46.     Before May 21, 2009, BUFSB had custody or control over funds belonging to BUFC and/or BUFS, which were to be used in connection with the funding of various employee benefit plans in which certain employees of BUFC and/or BUFS participated and for which BUFC and/or BUFS is or may be liable (collectively, the "**Plans**") including, without limitation, the BankUnited Financial Corporation 401(k) Profit Sharing Plan (the "401(k) Plan") and the BankUnited Financial Corp. Supplemental Tax Deferred Savings Plan (the "**Deferred Compensation Plan**").

47.     In addition, BUFSB has or may have failed to pay to BUFC and/or BUFS certain moneys BUFSB is obligated to pay BUFC and/or BUFS for use in connection with various Plans including, without limitation, employee payroll deferrals and company contributions (matching and discretionary) to be made to the 401(k) Plan and the Deferred Compensation Plan.

48.     The funds owed by BUFSB to BUFC in connection with the Plans may include, but are not limited to, $39,600 in respect of the BUFC Supplemental Tax Deferred Savings Plan

49.     BUFC and/or BUFS demand turnover under 11 U.S.C. § 542 (or, in the alternative, an equitable lien, constructive or resulting trust, or other legal or equitable remedy entitling BUFC and/or BUFS to payment of 100% of its claim described above) in the amount of

$39,600, plus other presently unknown dollar amounts in respect of the claim described above, as set forth in Attachment 9 to the Proof of Claims.

### J.      Real, Personal and Other Property Taxes

50.      BUFC may have made payments to various governmental entities in which BUFSB or its subsidiaries operated or had property subject to real, personal and other property taxes.

51.      Such payments were made in respect of liabilities incurred by BUFSB and/or its subsidiaries for which BUFC may not have received reimbursement.

52.      BUFC demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 10 to the Proof of Claims.

### K.      Income Tax Refunds

53.      BUFC is a party to an Income Tax Allocation Agreement with BUFSB, which provides for the sharing of certain tax attributes and refunds (local, state, and federal), and which provides that BUFSB is liable to BUFC for certain amounts.

54.      Pursuant to this Income Tax Allocation Agreement, there may be inter-company income tax payables that are owed by BUFSB to any or all of the Plaintiffs and that were outstanding as of May 21, 2009.

55.      The Income Tax Allocation Agreement also requires that any income tax refunds received by BUFSB be allocated and paid by BUFSB to the Plaintiffs.

56.      To the extent that BUFSB received any income tax refunds before May 21, 2009, BUFSB may have failed to pay each Plaintiff its proportionate share of these refunds.

57.      To the extent FDIC-Receiver has received any income tax refunds after May 21, 2009, FDIC-Receiver is liable to each Plaintiff for its proportionate share of these refunds.

58.     Plaintiffs demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 11 to the Proof of Claims.

**L.     Employee, Officer, and Director Claims**

59.     One or more of the Plaintiffs may have paid compensation to employees, officers, and directors of BUFSB for services that may have provided benefits primarily or solely to BUFSB and its subsidiaries, and not to such Plaintiffs.

60.     Such Plaintiffs are entitled to reimbursement for these sums and any related taxes.

61.     Plaintiffs demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 12 to the Proof of Claims.

**M.      Professional Fee Claims**

62.     BUFC paid professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, as to which BUFC is entitled to reimbursement.

63.     BUFC demands allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 13 to the Proof of Claims.

**N.     Intercompany Advances**

64.     The amount due and owing to the Debtors from BUFSB for intercompany advances and payments for the period of October 2006 to May 21, 2009 was at least $46,902,483. *See* attached Exhibit A.

65.     Additional amounts may be due and owing for periods prior to October 2006.

66.     The foregoing amounts represent sums accrued or paid by the Debtors as owed by BUFSB to facilitate its operations or as inter-company income tax payables owed by BUFSB to any or all of the Plaintiffs pursuant to certain tax sharing agreements.

67.     The advances and the tax sharing arrangement were made with the intention and understanding that they be repaid by BUFSB.

68.     This amount does not reflect any setoffs that may be asserted by BUFSB against one or more of the Plaintiffs in respect of such intercompany transactions.

69.     Other amounts may have been due and owing to BUFS, CRE, and BU Realty from BUFSB for intercompany advances made with the intention and understanding that they be repaid by BUFSB.  The amount of these other intercompany advances is presently unknown.

70.     Plaintiffs demand allowance and payment in full of the claim described above in the amount of at least $46,902,483, plus other presently unknown dollar amounts in respect of the claim described above, as set forth in Attachment 14 to the Proof of Claims.

**O.     Services**

71.     One or more of the Plaintiffs have rendered services to BUFSB and/or its subsidiaries without receiving compensation for such services.

72.     Plaintiffs are entitled to reimbursement for these sums.

73.     Plaintiffs demand allowance and payment in full of the claim described above, the dollar amount of which is unknown at this time, as set forth in Attachment 15 to the Proof of Claims.

**P.     Fraudulent Transfers and Preferences**

74.     BUFC, along with its Debtor affiliates BUFS and CRE, continue to operate as debtors-in-possession; no trustee or examiner has been appointed in the bankruptcy cases.  BU Realty has not filed for bankruptcy and continues to operate outside of bankruptcy.

75.     At all relevant times BUFC directly or indirectly owned 100% of the capital stock of BUFSB.

76.     In addition to BUFSB, BUFC also owned the capital stock of BUFS, CRE, and BU Realty.

77.     BUFSB in turn owned the capital stock of a number of separately incorporated subsidiaries.

78.     Upon information and belief, one or more of the Debtors were or may have been insolvent or were or may have been rendered insolvent by the transactions described in paragraphs 80 through 97 below, and had unreasonably small capital, and/or had incurred debts beyond their respective ability to pay.   In this complaint, the term "insolvent" is used with respect to each of the Debtors in the sense that the sum of each of the Debtors' respective debts exceeded all of its respective property, at a fair valuation.

79.     By February, 2009, and possibly even earlier than that, federal regulators, including the FDIC, had assumed effective control of BUFSB.   Among other things, BUFSB conceded to the regulators' extensive powers over itself and its operations; the regulators required the management of BUFC to keep them fully informed of their plans and to obtain their consent for taking many actions; and the managers cooperated with the regulators in achieving the regulators' goal of reducing their overall costs in handling the collapse and anticipated Receivership of BUFSB.

80.     Upon information and belief, in the two-year period beginning May 22, 2007, during which time one or more of the Debtors were insolvent or were rendered insolvent or had unreasonably small capital and/or had incurred debts beyond their respective ability to pay, one or more of the Debtors engaged in transactions that, directly and indirectly, transferred interests

in property to BUFSB at a time when such Debtors were insolvent, with the result that such Debtors received either no value or far less than reasonably equivalent value or fair consideration. Also, upon information and belief, one or more of those transactions may have been carried out with actual intent to hinder, delay, or defraud creditors of one or more of the Debtors.  Upon information and belief, each of these transactions substantially and immediately diminished the net worth of one or more of the Debtors.  Upon further information and belief, the FDIC or the OTS induced BUFC to make one or more transfers to BUFSB at a time when such agencies knew or should have known that appointment of the FDIC as receiver for BUFSB was imminent.

81.     Based on the evidence currently available to the Plaintiffs, the transactions listed in paragraphs 82 through 88 below (without limitation), occurring within two years of the filing of the Debtors' bankruptcy petitions, directly or indirectly transferred interests in property from BUFC, BUFS, and/or CRE, to BUFSB and/or BUFSB's subsidiaries under the circumstances described in paragraph 80 above.

82.     In or about September, 2007, BUFC transferred $80 million to BUFSB, without receiving any consideration in return for such transfer.

83.     Some time in or about July or August, 2008, BUFC transferred an additional $80 million to BUFSB, without receiving any consideration in return for such transfer.

84.     At the insistence of the OTS, the transfer described in paragraph 83 above was backdated to reflect such transfer as having been made as of June 30, 2008.

85.     On or about August 7, 2008, BUFC transferred $15 million to Bear Stearns, which transfer, upon information and belief, may have been for the benefit of BUFSB.  On or about August 13, 2008, BUFC received a transfer in the amount of $15 million from BUFSB.  It

is presently unknown whether the August 13, 2008 $15 million transfer from BUFSB to BUFC is related to the August 7, 2008 $15 million transfer from BUFC to Bear Stearns.

86.    During the two years before their bankruptcy filings, one or more of the Debtors made payments that should have been made by BUFSB, including, for example, the payments described in paragraph 62 hereof for professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, and payments reflected as intercompany advances described in paragraphs 64 through 69 hereof.  The value of the property transferred by the Debtors through such payments is currently unknown to Plaintiffs.

87.    During the two years before their bankruptcy filings, one or more of the Debtors failed to collect market value payments for services rendered to BUFSB, including, for example, the payments described in paragraphs 71 and 72 hereof.  The value of the property thus transferred by the Debtors is presently unknown to Plaintiffs.

88.    To the extent that the transactions described herein are determined not to have been made by any of the Debtors to BUFSB and/or any subsidiaries of BUFSB pursuant to a contract enforceable by any of the Debtors, or without reasonably equivalent value, any and all of those transactions made within the past two years are avoidable by the Debtors.

89.    Based on the evidence currently available to the Plaintiffs, a number of transactions occurring less than four years before the filing of the Debtors' bankruptcy petitions, appear to have directly or indirectly transferred property or value from one or more of the Debtors to BUFSB and/or its subsidiaries, including the transfers set forth in paragraphs 90 through 97 below.  Subject to further investigation, upon information and belief, at some point in

time one or more of the Debtors may have been insolvent or may have been rendered insolvent or had unreasonably small capital and/or had incurred debts beyond their respective ability to pay, one or more of the Debtors may have engaged in transactions that, directly and indirectly, transferred interests in property to BUFSB at a time when such Debtors may have been insolvent, with the result that such Debtors received either no value or far less than reasonably equivalent value or fair consideration.  Upon information and belief, one or more of these transactions may have substantially and immediately diminished the net worth of one or more of the Debtors.

90.     In or about June, 2005, BUFC transferred $30 million to BUFSB, without receiving any apparent consideration in return for such transfer.

91.     In or about September, 2005, BUFC transferred $25 million to BUFSB, without receiving any apparent consideration in return for such transfer.

92.     In or about December, 2005, BUFC transferred $15 million to BUFSB, without receiving any apparent consideration in return for such transfer.

93.     In or about June, 2006, BUFC transferred $75 million to BUFSB, without receiving any apparent consideration in return for such transfer.

94.     In or about September, 2006, BUFC transferred $40 million to BUFSB, without receiving any apparent consideration in return for such transfer.

95.     During the period beginning four years before its bankruptcy filing, one or more of the Debtors made payments that should have been made by BUFSB, including, for example, the payments described in paragraph 62 hereof for professional fees and expenses to attorneys, accountants, investment bankers, and other outside professionals in respect of services rendered to or for the primary benefit of BUFSB and BUFSB's subsidiaries, and their respective employees, officers, and directors, and payments reflected as intercompany advances described

in paragraphs 64 through 69 hereof.   The value of the property transferred by the Debtors through such payments is currently unknown to Plaintiffs.

96.     During the period beginning four years before its bankruptcy filing, one or more of the Debtors failed to collect market value payments for services rendered to BUFSB, including, for example, the payments described in paragraphs 71 and 72 hereof.  The value of the property thus transferred by the Debtors is presently unknown to Plaintiffs.

97.     To the extent that the transactions described herein are determined not to have been made by any of the Debtors to or for the benefit of BUFSB and/or any subsidiaries of BUFSB pursuant to a contract enforceable by any of the Debtors, or without reasonably equivalent value, any and all of those transactions made within the period beginning four years before its bankruptcy filing are avoidable by the Debtors.

98.     All of the transactions described in paragraphs 80 through 97 above were made with the full knowledge and acquiescence (and, in some cases the insistence) of the federal regulators, and one or more of the transactions described in paragraphs 80 through 97 above may have been made with the actual intent, held by both BUFC's then-managers and the federal regulators who controlled those managers, of hindering, delaying, or defrauding the creditors of one or more of the Debtors.

99.     Upon information and belief, in the one-year period beginning May 22, 2008, during which time one or more of the Debtors were insolvent, one or more of the Debtors made one or more transfers (a) to or for the benefit of one or more creditors, which creditors, at the time of such transfers were insiders, (b) for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) that enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter

7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

100.    Upon information and belief, in the ninety-day period beginning February 21, 2009, during which time one or more of the Debtors were insolvent, one or more of the Debtors made one or more transfers (a) to or for the benefit of one or more creditors, (b) for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) that enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.  Upon information and belief, and based on the evidence currently available to the Debtors, the foregoing transfers include (without limitation) a transfer from BUFC to BUFSB in the amount believed to be approximately $7.9 million or more  made during the ninety-day period before the filing of the Debtors' bankruptcy petitions, in respect of claims by BUFSB against BUFC under the Income Tax Allocation Agreement discussed in paragraphs 53 through 57 hereof.

101.    On May 21, 2009, the OTS closed BUFSB and appointed the FDIC as its receiver. On this date, the FDIC entered into a Purchase and Assumption Agreement with New Bank providing for the sale of certain assets of BUFSB to New Bank and the assumption of certain liabilities of BUFSB by New Bank.

102.    Sections 548 and 544(b) of the Bankruptcy Code provide for the avoidance of fraudulent transfers made by a Debtor.  Section 548 authorizes the avoidance of certain transfers of interests in property made on or within two years before the filing of the bankruptcy petition. Under § 548(a)(1)(A), a transfer may be avoided if made with actual intent to hinder, delay, or

defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.  Under § 548(a)(1)(B), a transfer may be avoided if less than reasonably equivalent value was received in exchange for the transfer and the Debtor either (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (iv) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

103.    Section 544(b) of the Bankruptcy Code incorporates relevant state fraudulent transfer law, which is Florida state law with respect to the Debtors' claims against the FDIC as receiver for BUFSB.  The Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 et seq., incorporated through 11 U.S.C. § 544(b), provides for the avoidance of transfers (A) made with actual intent to hinder, delay, or defraud any creditor of the debtor, or (B) made without receiving a reasonably equivalent value in exchange for the transfer or obligation, and as to which the debtor: (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; or (iii) was insolvent at that time or became insolvent as a result of the transfer or obligation.  The Florida Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101 et seq., incorporated through § 544(b), further provides for the

avoidance of a transfer if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

104.    Section 547(b) of the Bankruptcy Code provides for the avoidance of preferential transfers made by a Debtor.  Subject to certain applicable statutory defenses, a transfer of an interest of a debtor in property may be avoided if made (a) to or for the benefit of a creditor; (b) for or on account of an antecedent debt owed by the debtor before such transfer was made; (c) made while the debtor was insolvent; (d) made (i) on or within 90 days before the date of the filing of the debtor's bankruptcy petition or (ii) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and (e) that enabled such creditor to receive more than such creditor would receive if (i) the debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfer had not been made, and (iii) such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

105.    Sections 544 and 548 cover not only direct transfers of property by the Debtors, but also all transactions in any form that effectively transfer value away from the Debtors and thereby reduce their respective net worth.

106.    The transfers of interests in property described in paragraphs 80 through 97 above (and listed to the extent presently known in paragraphs 82 through 88 and 90 through 97 above) may be avoidable fraudulent transfers under §§ 548(a)(1)(A), 548(a)(1)(B), and 544(b) of the Bankruptcy Code.

107.    The transfers occurring on or after May 22, 2007 and described in paragraphs 80 through 97 above (and listed to the extent presently known in paragraphs 82 through 88 and 90

through 97 above) may be avoidable under § 548(a)(1)(A) because (1) they took place within two years before the filing of the Debtors' Chapter 11 petitions; and (2) they may have been made with the actual intent to hinder, delay, or defraud the Debtors' creditors (such intent may have been held both by the BUFC management at the time and by the FDIC and other regulators, who were in control of BUFC and whose intent may be imputed for purposes of § 548(a)(1)(A)).

108.    The transfers occurring on or after May 22, 2007 and described in paragraphs 80 through 97 above (and listed to the extent presently known in paragraphs 82 through 88 and 90 through 97 above) may be avoidable under § 548(a)(1)(B) because (1) they took place within two years before the filing of the Debtors' Chapter 11 petitions; (2) transfers by a parent to a subsidiary that will benefit only a third party are not transfers for reasonably equivalent value, and one or more of the respective Debtors may not have received reasonably equivalent value for the transfers made; and (3) one or more of the Debtors may have been insolvent or may have been rendered insolvent by these transfers, and/or may have been left with unreasonably small capital, and/or either may have intended or believed at the time that its debts were beyond its ability to pay, and/or such transfers may have been to or for the benefit of an insider, or such obligations may have been incurred to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

109.    The transfers described in paragraphs 80 through 97 above (and listed to the extent presently known in paragraphs 82 through 88 and 90 through 97 above) may be avoidable under § 544(b) because they occurred more than two, but less than four years before the filing of the Debtors' Chapter 11 petitions, and may have been made (A) with actual intent (both management's and the FDIC's) to hinder, delay, or defraud any creditor of one or more of the Debtors; (B) without receiving a reasonably equivalent value in exchange for the transfer or

obligation, and one or more of the respective Debtors: (i) may have been engaged or may have been about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; (ii) may have intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due; or (iii) may have been insolvent at that time or may have become insolvent as a result of the transfer or obligation; or (C) to an insider for an antecedent debt, one or more of the respective Debtors may have been insolvent at that time, and the insider may have had reasonable cause to believe that such Debtor was insolvent.

110.    The transfers occurring on or after May 22, 2008 and described in paragraph 99 above may be avoidable under § 547(b) because (1) they took place within the year before the filing of the Debtors' Chapter 11 petitions; (2) one or more of the Debtors may have been insolvent at the time of such transfers, and (3) such transfers (a) were made to or for the benefit of one or more creditors, which creditors, at the time of such transfers were insiders, (b) were made for or on account of an antecedent debt owed by such Debtors before such transfers were made, and (c) enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

111.    The transfers occurring on or after February 21, 2009 and described in paragraph 100 above may be avoidable under § 547(b) because (1) they took place within 90 days before the filing of the Debtors' Chapter 11 petitions; (2) one or more of the Debtors may have been insolvent at the time of such transfers, and (3) such transfers (a) were made to or for the benefit of one or more creditors, (b) were made for or on account of an antecedent debt owed by such

Debtors before such transfers were made, and (c) enabled such creditors to receive more than such creditors would receive if (i) such Debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) such creditors received payment of such debts to the extent provided by the provisions of the Bankruptcy Code.

112.    The Debtors demand allowance and payment in full of the claims described above, including without limitation the return of all of the interests in property (or their value) transferred pursuant to the transactions listed in paragraphs 80 through 97, 99 and 100 above in the amount of at least $367.9 million, as well as in all other presently unknown transactions described in paragraphs 80 through 97, 99 and 100 above, together with interest from the date of each transfer.

113.    The transfers of property described and set forth in paragraphs 80 through 97, 99 and 100 above may also be void and/or voidable by one or more of the Debtors on the separate grounds of (a) failure of consideration; (b) unjust enrichment; and (c) unconscionability.

114.    One or more of the Debtors accordingly may be entitled to an appropriate remedy to recover the value of all of the improperly transferred property, including the remedies of (1) an equitable lien, (2) a constructive trust, and (3) a resulting trust, each encompassing or comprising all of the assets of BUFSB to the extent necessary to provide full relief to one or more of such Debtors.

115.    At various times during the period covered by this Claim, BUFSB may have engaged in a conspiracy or joint action with certain other parties, including federal regulators, the intent and result of which were to injure the Debtors and their creditors.  As a result of this action, BUFSB may be liable to the Debtors for all losses occurring through those actions.

116. BUFSB may be liable to the Debtors for indemnity or contribution with respect to any claims against the Debtors, including without limitation any claims asserted by any federal or state governments or regulatory agency as well as by any bank receivership.

117. Because the claims set forth above are based on void, voidable and/or avoidable transactions, they should be entitled to priority ahead of claims asserted by BUFSB's depositors and other general creditors, all of which should be subordinated to the claims set forth herein. Accordingly, the FDIC is obliged to provide full (100%) payment of each claim (with interest), not a reduced or "pro rata" percentage.

118. To the extent that the FDIC-Receiver may claim that insufficient funds remain in the Receivership to pay in full any or all of the claims asserted herein, FDIC-Corporate is responsible for full payment of those claims.

**Q. Indemnification, Contribution and Reimbursement**

119. Persons or entities have asserted or may assert claims against Plaintiffs for acts or omissions of BUFSB and/or BUFSB's subsidiaries.

120. To the extent such claims are or have been asserted and Plaintiffs are required to defend such claims and/or are determined to have any liability for such claims, Plaintiffs assert claims against BUFSB for indemnification, contribution, and reimbursement, including (without limitation) with respect to the following:

(a) On September 16, 2008, a class action lawsuit was filed against Alfred Camner, Ramiro Ortiz and Humberto Lopez in this Court, Case No. 08-CV-22572. The allegations of wrongdoing asserted against Messrs. Camner, Ortiz and Lopez involve or may involve acts or omissions that one or more of them committed for or on behalf of

BUFSB and/or BUFSB's subsidiaries.[1]  Messrs. Camner, Ortiz and Lopez may have demanded indemnification from Plaintiffs for the cost of their respective defense of this lawsuit, for which Plaintiffs may have provided a limited indemnification prior to May 21, 2009.  Messrs. Camner, Ortiz and Lopez have sought relief from the automatic stay in effect in the Debtors' bankruptcy cases in order to obtain reimbursement for their defense costs from Plaintiffs' Directors and Officers insurance policies in effect from November 10, 2007 to November 10, 2008.  Plaintiffs hereby demand payment in full of the amounts paid to date by Plaintiffs to Messrs. Camner, Ortiz and Lopez, at least to the extent those payments relate to allegations of wrongdoing by them in their capacity as agents for or on behalf of BUFSB and/or BUFSB's subsidiaries.  Similarly, Plaintiffs demand payment in full for any proceeds paid by the insurers that issued Plaintiffs' Directors and Officers policies for the period 2007-2008, at least to the extent those proceeds relate to the allegations of wrongdoing by Messrs. Camner, Ortiz and Lopez in their capacity as agents for or on behalf of BUFSB and/or BUFSB's subsidiaries.

(b)     By letter dated January 6, 2009, Branch Banking & Trust Company ("**BB&T**") issued a formal demand for money from Plaintiffs, alleging that Plaintiffs or their agents unlawfully entered the premises, removed appliances and equipment, and demolished parts of a house for which Plaintiffs had foreclosed their mortgage interest and sold to BB&T via an auction held on April 30, 2008.  BB&T alleges that the trespass, demolition and theft rendered the property unsalable.  To the extent allegations of wrongdoing asserted by this plaintiff or other similarly situated plaintiffs relate to acts or

---

[1] This action has since been dismissed without prejudice.

omissions by BUFSB and/or BUFSB's subsidiaries, Plaintiffs demand payments in full for all corresponding defense costs and/or judgments or settlements.

(c)     Capital One Bank has filed a lawsuit in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging negligence in permitting an individual to open a bank account in its name.   To the extent allegations of wrongdoing asserted by this plaintiff (or other similarly situated plaintiffs) relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Plaintiffs demand payments in full for all corresponding defense costs and/or judgments or settlements.

(d)     George W. Ward, Jr., et al. has filed a lawsuit in the Court of Common Pleas, Hamilton County, Ohio, claiming misrepresentation by a mortgage broker in a consumer mortgage loan matter.   To the extent allegations of wrongdoing asserted by this plaintiff (or other similarly situated plaintiffs) relate to acts or omissions by BUFSB and/or BUFSB's subsidiaries, Plaintiffs demand payments in full for all corresponding defense costs and/or judgments or settlements.

121.    Plaintiffs demand allowance and payment in full of the claims described above, including without limitation all corresponding defense costs and/or judgments or settlements, the dollar amount of which is unknown at this time, as set forth in Attachment 17 to the Proof of Claims.

**R.     Other Amounts Due**

122.    Plaintiffs may have other claims against BUFSB and/or its subsidiaries, as to which BUFSB is liable to Plaintiffs.

123.    Plaintiffs demand allowance and payment in full of the claims described above, the dollar amount of which is unknown at this time, as set forth in Attachment 18 to the Proof of Claims.

S.      **Administrative Claims**

124.    In certain instances, BUFC may have paid or become liable for costs and/or expenses that inured to the benefit of BUFSB and/or its subsidiaries after the Receivership Date. These amounts may include, without limitation, liability incurred by BUFC as a result of New Bank's decision to exclude certain contracts from the Purchase and Assumption Agreement and expenses incurred by BUFC that may have benefitted BUFSB.

125.    Plaintiffs demand allowance and payment in full of the claims described above, the dollar amount of which is unknown at this time, as set forth on page 6 of the Proof of Claims.

**THE FDIC-RECEIVER'S FAILURE**
**TO DISALLOW PLAINTIFFS' PROOF OF CLAIMS**

126.    As alleged above, Plaintiffs filed their Proof of Claims with the FDIC-Receiver on August 27, 2009.

127.    12 U.S.C. § 1821(d)(5)(A)(i) requires that, "[b]efore the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation *shall* determine whether to allow or disallow the claim and *shall* notify the claimant of any determination with respect to such claim" (emphasis added).

128.    The FDIC-Receiver failed to determine whether to allow or disallow the Plaintiffs' claims on or before February 23, 2010 – the date that was 180 days after the date the Plaintiffs filed their Proof of Claims with the FDIC-Receiver – and failed to notify the Plaintiffs of any determination with respect to such claim, in violation of its statutory mandate to do so pursuant to 12 U.S.C. § 1821(d)(5)(A)(i).   Through the date of filing of this complaint, the FDIC-Receiver has failed to notify the Plaintiffs of any determination with respect to their claims.

129.    12 U.S.C. § 1821(d)(6)(A) provides:

Before the end of the 60-day period beginning on the earlier of—

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

130.    Plaintiffs therefore have filed suit on its Proof of Claims pursuant to 12 U.S.C. § 1821(d)(6)(A).

## CONDITIONS PRECEDENT

131.    Any and all conditions precedent to the commencement of this civil action have been satisfied, occurred or been waived.

## CLAIMS FOR RELIEF

### Count I
### Determination that Plaintiffs' Proof of Claims are Allowed Based on the FDIC-Receiver's Failure to Disallow the Claims and Failure to Give Notice Thereof

132.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 131 above in their entirety.

133.    The FDIC-Receiver's failure to consider Plaintiffs' Proof of Claims and failure to notify the Plaintiffs of the allowance or disallowance of their Claims are an abrogation of the FDIC-Receiver's statutory duties.

27

134.    Each Claim should therefore be allowed based on the FDIC-Receiver's failure to disallow Plaintiffs' Proof of Claims and failure to notify the Plaintiffs of the allowance or disallowance of their Claims.

135.    Each Claim is a valid and proven claim against the Receivership and the FDIC-Receiver is obligated to pay such Claims (subject to, and in accordance with, 12 U.S.C. § 1821(d)(11)).

**Count II**
**Determination of Plaintiffs' Proof of Claims**

136.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 131 above in their entirety.

137.    Under 12 U.S.C. § 1821(d)(6)(A), the Court has jurisdiction to consider Plaintiffs' Claims set forth in this Proof of Claims.

138.    Each Claim is a valid and proven claim against the Receivership and the FDIC-Receiver is obligated to pay such Claims (subject to, and in accordance with, 12 U.S.C. § 1821(d)(11)).

**Count III**
**Demand for Accounting**

139.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 131 above in their entirety.

140.    Plaintiffs are entitled to an accounting of the disposition of assets of the Receivership if any of their Claims are not satisfied in full.

141.    Plaintiffs are entitled to an accounting of all property transferred from Plaintiffs in connection with the Receivership.

## Count IV
### Demand for Meeting of BUFSB
### Shareholders to Elect Successor Agent

142.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 131 above in their entirety.

143.    Pursuant to 12 U.S.C. § 197(a), upon payment to each and every creditor of BUFSB whose claim or claims as such creditor shall have been proved or allowed as therein prescribed, the full amount of such claims, and all expenses of the Receivership, BUFC, as sole shareholder of BUFSB, demands that the FDIC-Receiver call a meeting of the shareholders of BUFSB for the purpose of determining whether the FDIC-Receiver shall continue and wind up the affairs of BUFSB, or whether an agent shall be elected for that purpose.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to grant the following relief:

(a)    An order requiring the FDIC-Receiver to convene a meeting of the shareholders of BUFSB upon payment to each and every creditor of BUFSB whose claim or claims as such creditor shall have been proved or allowed as therein prescribed, the full amount of such claims, and all expenses of the Receivership, for the purpose of determining whether the FDIC-Receiver shall continue and wind up the affairs of BUFSB, or whether an agent shall be elected for that purpose;

(b)    An order declaring Plaintiffs' Claims to be valid and proven against the Receivership;

(c)    An order allowing Plaintiffs' Claims in the amount of not less than $414,930,952;

(d)    An order directing the FDIC-Receiver to pay the Claims from the assets of the Receivership in accordance with 12 U.S.C. § 1821(d)(11);

(e)     An order directing the FDIC-Receiver to provide Plaintiffs with an accounting of the disposition of assets of the Receivership if any Claim is not satisfied in full;

(f)     An order directing the FDIC-Receiver to provide Plaintiffs with an accounting of all property transferred from Plaintiffs in connection with the Receivership;

(g)     Enter judgment in favor of Plaintiffs and against the FDIC-Receiver with respect to all of the foregoing;

(h)     Award Plaintiffs costs and attorneys fees as may be permitted by law; and

(i)     Award Plaintiffs such other relief as may be just.

Dated April 22, 2010.                     Respectfully submitted,

                                          GREENBERG TRAURIG, P.A.
                                          Counsel for Plaintiffs
                                          1221 Brickell Avenue
                                          Miami, Florida 33131
                                          Telephone: (305) 579-0500
                                          Facsimile: (305) 579-0717

                                          By: _____/s/ Jacqueline Becerra_____
                                              JACQUELINE BECERRA
                                              Florida Bar No. 0025135
                                              becerraj@gtlaw.com
                                              MARK D. BLOOM
                                              Florida Bar No. 303836
                                              bloomm@gtlaw.com
                                              SCOTT M. GROSSMAN
                                              Florida Bar No. 0176702
                                              grossmansm@gtlaw.com

*MIA 181,151,204v5*