UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:10-cv-21307-PCH

BANKUNITED FINANCIAL
CORPORATION, BANKUNITED
FINANCIAL SERVICES, INC.,
CRE AMERICA CORPORATION,
and BU REALTY CORPORATION,

     Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as
Receiver of BankUnited, FSB,

     Defendant.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND RESPONSE TO MOTION FOR SUMMARY JUDGMENT ON COUNT I

Of Counsel:

Kathryn R. Norcross, Senior Counsel
knorcross@fdic.gov
    -and-
Sonya L. Levine, Counsel-Legal Division
slevine@fdic.gov
FEDERAL DEPOSIT INSURANCE
CORPORATION
Legal Division
3501 Fairfax Drive, VS-D-
Arlington, VA  22226
(703) 562-2783

Bruce J. Berman (Fla. Bar # 159280)
bberman@mwe.com
McDERMOTT WILL & EMERY LLP
201 S. Biscayne Blvd., Suite 2200
Miami, FL 33131-4336
Tel:  305.358.3500 / Fax:  305.347.6500
    - and –
Geoffrey T. Raicht
(*Pro hac vice* motion to be filed)
graicht@mwe.com
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173-1922
Tel:  212.547.5400 / Fax:  212.547.5444

*Attorneys for Defendant*
*FEDERAL DEPOSIT INSURANCE CORPORATION*
*as Receiver of BankUnited FSB*

## PRELIMINARY STATEMENT[1]

This case arises from the failure of Florida's largest bank, seized by the Federal Office of Thrift Supervision and turned over to the FDIC as receiver, which  could cost the FDIC more than $5 *billion* to resolve..  Despite this, the bank's holding company, now in bankruptcy (along with three subsidiaries) filed this case against the FDIC, as receiver, in an attempt to recover more than $400 million in damages for capital contributions that were inadequate to save the Bank.  And this suit was filed against a receivership estate in which any anticipation of net assets for distribution to claimants seems doubtful.

Further, the holding company seeks the equivalent of a default judgment, without having to prove any entitlement to damages, by asking this Court, in Count I of the Complaint (and in a motion for summary judgment on this count, filed shortly thereafter) to construe statutes governing the receivership claims process to penalize the FDIC for failing to expressly disallow these claims. Title 12 however, and the case law interpreting this statute, does not permit this draconian result.  Rather, it provides that the failure of the receiver to expressly deny a claim constitutes the deemed denial of the claim, which allows a claimant to file a lawsuit for de novo review of the claim.

In addition, this Court should dismiss the Complaint because it presents little more than *categories* of potential, purely speculative, and insufficiently identified claims – 19 categories in all – none of which are legally sufficient to present plausible claims upon which relief can be granted to any of the four Plaintiffs.  From a pure pleadings standpoint, these 19 categories of claims, spread out through most of the 131 preliminary allegations incorporated by reference in

---

[1] The FDIC, as Receiver, is referred to herein as "FDIC-R."  Unless otherwise indicated, all other abbreviations herein are in accordance with the definitions in the Plaintiffs' Complaint.

MIA 362711-4.084080.0020

*each and every one* of the four counts of the Complaint, directly violate Federal Rule 10(b) and represent the kind of extreme "shotgun" pleading prohibited by the Eleventh Circuit.

For these reasons, and others detailed herein, this Complaint should be dismissed.

## STANDARD OF REVIEW

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the court took the opportunity to revisit the long quoted language from <u>Conley v. Gibson</u>, 355 U.S. 41 (1957):  "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Twombly</u>, 550 U.S. at 561, quoting <u>Conley</u>, 355 U.S. at 45-46.  The court concluded, however, that "this famous observation has earned its retirement." <u>Twombly</u>, 550 U.S. at 563.

<u>Twombly</u> held that a motion to dismiss requires a two-step analysis.  First, the court must consider only well-pleaded facts, not conclusory allegations.   Second, the claims must be "plausible," i.e., the well-pleaded allegations must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Id.</u>, at 557, 570.  Thus, the factual allegations "must be enough to raise a right to relief above the speculative level." <u>Id.</u>, at 555 (quoted by this Court in <u>Roth v. Lawrence</u>, No. 10-20812-CIV, 2010 WL 2162900, at *1 (S.D. Fla. May 26, 2010) and <u>Lippman v. City of Miami</u>, No. 06-211-24-CIV, 2010 WL 2508942 at *2 (S.D. Fla. June 16, 2010)).[2]

While <u>Twombly</u> was decided in an antitrust context, its rationale was followed by the Supreme Court two years later in an entirely different context, but to the very same effect, in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009) (claims challenging the constitutionality of prison conditions).  Thus, in <u>Iqbal</u>, the Court began its analysis with the first step, "by identifying the allegations in the complaint that are not entitled to the assumption of truth" (<u>id.</u>, at 1951),

---

[2] Copies of slip opinions cited herein are attached, for the convenience of the Court, in <u>Composite Exhibit "A"</u>.

rejecting allegations that it considered "conclusory and not entitled to be assumed true." Id. (citing Twombly).  Iqbal then moved to the second step of the analysis, to "next consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." Id. (emphasis added).

The Eleventh Circuit applied this new analysis in American Dental Ass'n v. CIGNA Corp., 605 F.3d 1283 (11th Cir. 2010), referring to Twombly and Iqbal as adopting "a new pleading standard." Id., at 1288.  The two-step analysis has since been repeatedly recognized and applied by this Court.  See, e.g., Jershun v. Florida, No. 09-60825-CIV-HUCK, 2009 WL 2386051 (S.D.Fla. 8/3/2009), approving the report and recommendations of the magistrate judge, who wrote:

> To determine whether a complaint fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry.  First the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. . . .  Second, the Court must determine whether the complaint states a plausible claim for relief.

Id., at *2 (citing Iqbal and its internal citations to Twombly).

The retirement of the Conley v. Gibson "no set of facts" formulation, however, did not disturb that court's statement that the Rule 8(a) requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief" is to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." See American Dental, supra, 605 F.3d at 1288 (quoting Conley v. Gibson).

The application of this standard to the complaint here compels dismissal, because of the absence of any proper factual allegations in the first step of the analysis. The factual allegations are predominantly speculative and fail to provide fair notice to the defendant.  In addition, none of these claims plausibly suggests any entitlement to relief.

## POINT I

## COUNT I FAILS TO STATE A CLAIM
## UPON WHICH RELIEF CAN BE GRANTED

In Count I of their Complaint, Plaintiffs allege entitlement, as a matter of law, to allowance of their approximately $415 million in claims filed against the FDIC, as receiver, without having to prove that any of their claims are valid.  Plaintiffs allege that because the FDIC-R never notified the Plaintiffs of the allowance or disallowance of their claims within the statutory 180-day period, their claims are deemed allowed.  12 U.S.C. §1821(d)(5)(A)(1).

The Plaintiffs filed a Motion for Summary Judgment on Count I (D.E. 8), setting out their legal argument in support of this proposition.  The Plaintiffs' argument, however, ignores case law specifically addressing the statute at issue and overlooks the fact that nothing in the relevant provisions of Title 12 provides for the kind of punitive and draconian relief they seek.  Indeed, the relevant case law explains why the Plaintiffs' strained argument is simply wrong.[3]

*The Relevant Statutory Provisions*

The issue is presented by the following pertinent provisions of 12 U.S.C. §1821(d) ("Powers and duties of Corporation as conservator or receiver"):

(5) Procedures for determination of claims

(A) Determination period

(i) In general

Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation  shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

---

[3] Plaintiffs also overlook the FDIC's publicly posted Resolutions Handbook, which contains a thorough and accurate explanation of the statutory claims process, consistent with proper statutory construction and the case law that has applied it.

(6) Provision for agency review or judicial determination of claims

(A) In general

Before the end of the 60-day period beginning on the earlier of –

(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit in such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim.)

Furthermore, section 1821(d)(6)(B) of Title 12, "Statute of limitations," states that a claimant's failure to seek review or file suit on its claim within the 60-day period under subsection (A) will result in the claim being "deemed to be disallowed" and that such disallowance shall be final.

Significantly, while the consequence of a claimant's failure to meet the requirements of subdivision (6)(A) is expressly set forth in section 1821(d)(6)(B) of Title 12, there is no concomitant provision for the failure of the receiver to satisfy the 180-day requirement.

*Applicable Principles of Statutory Construction*

Elementary principles of statutory construction compel the conclusion that the failure of the receiver to act within the 180 days must be deemed a disallowance of the claim, for two reasons.

First, the statutory provision for counting the 60 days from the end of the 180-day period would otherwise have no meaning, and statutes must be construed, wherever possible, so that all of their provisions have meaning. Bhd. of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1195 (11th Cir. 2008) ("To the extent possible, the rules of statutory construction require courts to give meaning to

- 5 -

every word and clause in a statute.  Additionally, courts must reject statutory interpretations that would render portions of a statute surplusage.") (internal citations omitted).

Second, it has been widely held that "'[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision.'" Marshall Durbin Food Corp. v. ICC, 959 F.2d 915, 919 (11th Cir. 1992) (internal citation omitted). See also, Thomas v. Barry, 729 F.2d 1469, 1470 n. 5 (D.C.Cir. 1984) (internal citations omitted); and Fort Worth Nat'l Corp. v. Fed'l Sav. & Loan Insur. Corp., 469 F.2d 47, 58 (5th Cir., 1972).

*Directly Applicable Case Law*

In light of the foregoing principles, it is unsurprising that those cases directly dealing with these Title 12 provisions – none of which are disclosed in the Plaintiffs' summary judgment memorandum – construe the applicable claims provisions adversely to Plaintiffs, some implicitly and others explicitly.  These cases hold that the failure of the FDIC (or earlier, the RTC operating under the same statute) to allow or disallow a claim within the 180 days is deemed a disallowance, triggering the 60-day review period at the end of the 180 days.  For example, in Henderson v. Bank of New England, 986 F.2d 319 (9th Cir. 1993), the Court stated that "Once a claim is filed, the FDIC has 180 days to determine whether to allow or disallow the claim. . . . If the claims is disallowed, or if the 180 days expire without a determination by the FDIC, then the claimant may request further administrative consideration . . . or seek judicial review." Id., 986 F.2d at 320 (emphasis added; citations omitted).  See also Althouse v. Resolution Trust Corp., 969 F.2d 1544, 1545 (3d Cir. 1992) ("If a claim is disallowed or if the RTC fails to make a determination within the 180 day period, the claimant is permitted 60 days within which to seek administrative review or to file suit . . . .") (emphasis added; citations omitted); Capitol Leasing

Co. v. FDIC, 999 F.2d 188, 192 (7th Cir. 1993) (same); Nat'l Union Fire Ins. Co. of Pittsburgh,

PA v. Midland Bancor, Inc., 854 F.Supp. 782, 785 (D.Kan. 1994) (same).

Two U.S. District Courts have reached the same conclusion, *directly* addressing the very

argument made by Plaintiffs here.  The court in Alberti, Larochelle & Hodson Eng. Corp. v. First

Meridian Group, No. CIV-92-157-P-C, 1993 WL 277807 at *3 (D. Me. July 8, 1993), analyzing

the statutes, ruled:

> Although FIRREA provides that 'the [FDIC] shall determine whether to allow
> or disallow the claim,' 12 U.S.C. § 1821(d)(5)(A)(i), this Court disagrees with
> Plaintiffs argument that the failure to act requires dismissal of the FDIC's
> affirmative defenses and counterclaims.  In the case, the Court concludes that the
> FDIC's failure to act is tantamount to a disallowance of the claim.

Id. (emphasis added).  The Alberti court reasoned that the statute of limitations (quoted above) is

imposed upon the claimant, but that "FIRREA imposes no sanction on the FDIC for not making

a determination within the 180-day period" and noted that the plain language of the statute

"appears to contemplate that the 180-day period may expire without resolution of the claim by

the FDIC." Id.

Similarly, in Metropolitan Life Ins. Co. v. RTC, No. 89-4986 (GEB), 1991 U.S. Dist.

LEXIS 21044, at *21 (D.N.J. Aug. 26, 1991), the court held, where the RTC had "failed to

administratively acknowledge Met Life's claim despite its apparent receipt," that:

> Because there was absolutely no action taken on plaintiff's claim for 180 days
> after it was filed with the RTC, plaintiff's claim is considered disallowed and
> plaintiff may continue its action in accordance with 12 U.S.C. § 1821(6)(A).

Id. (emphasis added; footnote omitted).

### *The FDIC's Public Disclosure*

For those without the benefit of counsel or skilled in statutory construction, the FDIC

maintains on its website a "Resolutions Handbook" to inform the public about how receiverships

work under Title 12.  See http://www.fdic.gov/bank/historical/reshandbook/.  Chapter 7 of the

Handbook, entitled "The FDIC's Role as Receiver," explains the claims process, and specifically, provides, under the heading "Resolution of Claims Against the Failed Institution:"

> An allowed claim will be paid on a pro rata basis with other allowed claims of the same class, to the extent there are funds available in the receivership after the expenses are paid. If a creditor's claim is denied, the creditor may seek judicial review of the claim by filing a lawsuit or continuing pending litigation within 60 days after the date the claim is denied. <u>If the receiver has not acted on the claim within 180 days of its filing, it is deemed to have been disallowed and the creditor may file suit within 60 days thereafter.</u>

Id., Resolutions Handbook, Ch. 7, at 71 (emphasis added).

In short, rules of statutory construction and case law applying those rules specifically to the provisions of Title 12 applicable here are unanimous in construing the statute to deem the FDIC's failure to allow or disallow a claim within 180 days, mandatory statutory language notwithstanding, as the equivalent of a disallowance. That result is not only mandated by the Title 12, but consistent with the statutory purpose of expediting claims consideration without penalizing a receiver which, in the midst of financial crises like those historically and presently, perform the important function of protecting depositors from the consequences of the failures of their depository institutions.

*Plaintiffs' Summary Judgment Motion*
<u>*Should be Denied as Moot*</u>

Because the allegations in Count I are legally insufficient to entitle the Plaintiffs to a judgment – effectively a judgment by default – and necessitate the dismissal of that Count under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, so too must Plaintiffs' motion for summary judgment on that count be denied. While there is no dispute here that FDIC-R did not expressly disallow Plaintiffs' claims or provide notice within the 180-day period, the dismissal order would moot that motion by determining that this fact upon which it is based does not entitle the Plaintiffs to the relief sought, as a matter of law.

- 8 -

## POINT II

## COUNT II FAILS TO STATE A CLAIM
## UPON WHICH RELIEF CAN BE GRANTED

**A.     Each of the 19 Claims Asserted in Count II, On their Face, Fail to Meet the Applicable Pleadings Standards**

In Count II of their Complaint, Plaintiffs (the bank holding company and affiliates) seek a judicial determination with respect to their various claims against their own failed bank, BUFSB, through the receivership conducted by the FDIC, as Receiver, under 12 U.S.C. § 1821(d).  The entirety of the claims submitted by Plaintiffs should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  The allegations of Count II wholly fail to comply with the pleading requirement of Rule 8(a)(2) to provide a "short and plain statement of the claim showing that the pleader is entitled to relief."  The nineteen claims submitted by Plaintiffs are speculative and indefinite, relying upon guesses as to what might have happened, what damages might have occurred, and even which of the individual Plaintiffs might have been injured.  These pleadings fall far short of the standard established by Twombly and elaborated upon by Iqbal, and provide no basis for recovery.

The Supreme Court in Twombly made it clear that speculative allegations are insufficient to avoid dismissal under Rule 12(b)(6).  Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."  See Twombly, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Iqbal, 129 S. Ct. at 1949, yet Plaintiffs have pleaded nothing more.  Plaintiffs repetitive and unsupported suppositions that the Bank or FDIC-R "may" have done something wrong or that a harm "may" have occurred to one or more of the four Plaintiffs clearly fall short of the pleading

standards proscribed by <u>Twombly</u> and <u>Iqbal</u>.  <u>See</u>, <u>e.g.</u>, Complaint ¶¶ 18–19.  Plaintiffs'
recitation of the elements of a cause of action and their bare conclusions that those elements have
been met likewise do not entitle Plaintiffs to any relief.  <u>See</u>, <u>e.g.</u>, Complaint ¶¶ 99, 110.

Moreover, Plaintiffs do not even present claims which plausibly entitle them to relief.
"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops
short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Iqbal</u>, 129 S. Ct.
at 1949 (quoting <u>Twombly</u>, 550 U.S. at 557).  Plaintiffs consistently plead claims without
providing any basis for them.  In essence, Plaintiffs do no more than describe situations in which
one might imagine BUFSB liable, but the pleadings do not meet any plausibility standard.

Finally, for a majority of the claims, Plaintiffs do not even know how much they have
been damaged, even if such damages allegedly stem from payments that they made.  A pleading
of damages is insufficient when it contains no specific or general estimate of the damages
suffered.  <u>In re Dato</u>, 410 B.R. 106, 112 (Bankr. S.D. Florida 2009).  And while Plaintiffs may
hope that discovery <u>might</u> assist, Rule 8 "does not unlock the doors of discovery for a plaintiff
armed with nothing more than conclusions" (<u>Iqbal</u>, 129 S. Ct. at 1950), much less conclusions
based upon indefinite speculation.

**B.**     <u>**Specific Pleadings Defects Applicable to All 19 Count II Claims**</u>

First, each of Plaintiffs' 19 Count II claims contains a reference to a specific attachment
to Plaintiffs' administrative Proof of Claims ("POC") filed in the FDIC-R's BUFSB receivership
(the "Receivership").  Even if these "attachments" (which are not attached to the Complaint) are
considered, they provide no more information about Plaintiffs' claims than the allegations in the

- 10 -

Complaint itself.  That is, it appears that the vague and speculative claims in the Complaint were actually lifted *verbatim* from those attachments, which are equally vague and speculative.[4]

Second, each of Plaintiffs' claims which assert, as the basis for the claim, an agreement entered into by the BUFSB, runs afoul of the <u>D'Oench Duhme</u> doctrine, codified as 12 U.S.C. § 1823(e).  <u>See also</u> 12 U.S.C. § 1821(d)(9)(A).  Section 1823(e) provides that no agreement that diminishes the FDIC-R's interest in any asset acquired under Section 1821 (e.g., the assets of a failed bank) shall be valid against the FDIC-R unless the agreement (A) is in writing, (B) was executed by the bank and claimant contemporaneously with the bank's acquisition of the asset, (C) was approved by the board of directors or its loan committee, and (D) has continuously been an official record of the bank.  The effect of the <u>D'Oench Duhme</u> doctrine, together with Section 1823(e), is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets . . . .  Focusing solely on documents in the bank's files allows the FDIC to assess the value of assets held by banks it insures . . . ."  <u>FDIC v. Zook Bros. Constr. Co.</u>, 973 F.2d 1448, 1451 (9th Cir. 1992).  Accordingly, where Plaintiffs have based claims upon agreements but have failed to plead that such agreements meet the requirements established by Section 1823(e), such claims must be dismissed.

**C.**    **<u>Each of the Individual 19 Count II Claims Fails to State a Claim Upon Which Relief Can be Granted</u>**

1.    <u>Claim "A":  Use of Real Property</u> (Complaint ¶¶ 17-20)

At best, Claim A speculates that (1) one or more people affiliated with the Bank (*perhaps* "employees, officers, or directors") "may have used" CRE's property without compensation to CRE, and (2) that someone from the Bank also "may have used" some unspecified real property (possibly an ownership interest, or leasehold interest, or other interest) which "may" have been

---

[4] A copy of the POC (with the attachments) is attached hereto as <u>Exhibit "B"</u> for the convenience of the Court.

owned by one or more of BUFC, BUFS, and BU Realty.  Complaint ¶¶ 17-19.  Moreover, the Complaint does not provide any basis for asserting that the Bank's use of the Plaintiffs' real property, if it occurred, entitles Plaintiffs to relief against the Bank.  Nor does Claim A provide any damages valuation.  Complaint ¶20.  In short, Plaintiffs' unadorned accusation, that the-defendant-unlawfully-hurt-me (or may have hurt me, or may have hurt one of us, but we are not saying which) is plainly insufficient, falling far short of the pleading necessary to show that the Plaintiffs (or any of them) are plausibly entitled to relief.[5]  A claim for damages which contains no estimate of the damages actually suffered falls short of Rule 8's requirement, as well.  Claim A should, therefore, be dismissed.

  2. <u>Claim "B":  Unpaid Fees and Commissions</u> (Complaint ¶¶ 21-23)

   Claim B provides no basis for asserting that BUFS is entitled to relief under either the Financial Institution Services Agreement or the Referral Agreement.[6]  While it is alleged that the Bank received payments under the two agreements without paying fees and commissions to BUFS, there are no transactions identified, no time periods, no identification of anyone from whom such payment(s) may have been received, no allegation of the amounts of any such receipts, no allegations of why any particular receipt would trigger liability under either of the two agreements, and no allegation of any amounts allegedly payable and unpaid under either of the agreements (i.e., no allegation of damages sought).  Complaint ¶ 23.  In short, this in another unadorned, the-defendant-unlawfully-hurt-me accusation, with no estimate of damages and no plausible entitlement to relief.  Claim B is insufficient to meet the pleading requirements of Rule 8 and should, therefore, be dismissed.

---

[5] It is equally implausible that inter-company obligations would run for any kind of use of property for directors or officers, inasmuch as the Bank was wholly owned by BUFC, with substantially common directors and officers.

[6] We note that ¶ 22 states that "the Bank is due fees and commissions..."  We assume that this is a typographical error and that Plaintiffs intended to allege that "BUFS [the financial services affiliate of the holding company] is due fees and commissions...."

MIA 362711-4.084080.0020

3.    Claim "C":  Enterprise Value of BUFS (Complaint ¶¶ 24-25)

At best, Claim C speculates that the Bank "may have assigned or attempted to assign" BUFS's enterprise value.  Complaint ¶ 24.  Moreover, the Complaint does not provide any basis for asserting that the Bank's assignment of BUFS's enterprise value, if it occurred, entitles BUFS to relief against the Bank.  Finally, Claim C does not provide any damages valuation.  Complaint ¶ 25.  Thus, this claim, too, falls far short of the requirements of Rule 8, and fails to show that the Plaintiffs are plausibly entitled to relief.  Accordingly, Claim C should be dismissed.

4.    Claim "D":  Intellectual Property Use (Complaint ¶¶ 26-29)

At best, Claim D speculates that the Bank "may have been using" (without specifying when or how such use may have occurred) or "may have assigned" (with no specification of when or to whom) certain intellectual property rights (with no identification of what these supposed rights were) owned by Plaintiffs (without specifying which of the four Plaintiffs owns which of the subject rights – whatever they may be).  Complaint ¶¶ 26-27.  Moreover, the Complaint does not provide any basis for asserting that the Bank's use or assignment of any of the Plaintiffs' intellectual property, if it occurred, entitles any of the Plaintiffs to relief against the Bank.  And, as with the other claims, Claim D does not provide any damages valuation.  Complaint ¶ 29.  Thus, Claim D is also insufficient to meet the pleading requirements of Rule 8 and should, therefore, be dismissed.

5.    Claim "E":  Customer List Use (Complaint ¶¶ 30–33)

Claim E is premised upon vague references to "certain customer lists" (nowhere identified with any specificity) and "other proprietary trade information" (also nowhere identified), allegedly owned by BUFS.  Claim E speculates that these unidentified rights (or some unidentified portion of them) were used by BUFS "or" its receivership estate (i.e., the receivership conducted by FDIC-R), without identifying which (Complaint ¶ 31).  It further

- 13 -

speculates that the Bank "may have assigned" or may have "attempted to assign" all or part of these unidentified rights (without specifying those rights to which Plaintiffs refer).   Id. Moreover, the Complaint does not provide any basis for asserting that the Bank's (or its receivership estate's) use or assignment or attempts at assignment, if any of that occurred, entitles BUFS to relief against the Bank.  And again, Claim E does not provide any damages valuation.  Complaint ¶ 33.  There is no showing of any entitlement to relief, much less any plausible entitlement.  And a claim for damages which contains no estimate of the damages actually suffered falls short of Rule 8's requirement.  Claim E should also be dismissed.

      6.     <u>Claim "F":  Guaranties</u> (Complaint ¶¶ 34–37)

Claim F is based on a premise that apparently has not yet occurred—that "if" the Bank defaults on certain contracts with third parties on which "BUFC may have executed guaranties," then "BUFC may be liable" to those third parties.  Aside from the fact that the Bank's defaults have not yet and may not ever occur, Plaintiffs' claim fails to identify anything about the guaranties, the contracts, or the third parties.  Complaint ¶ 34–34.  As before, Claim F does not provide any damages valuation.  Complaint ¶ 37.  Claim F does not show any harm, let alone any plausible entitlement to relief.  Accordingly, Claim F should also be dismissed.

      7.     <u>Claim "G":  Artwork and Other Personal Property</u> (Complaint ¶¶ 38–41)

At best, Claim G speculates that the Bank "may have been using" (without specifying when or how such use may have occurred, the nature of such use, or any agreements covering such use) certain artwork and other personal property owned by BUFC (none of which artwork or other property is identified).  Complaint ¶¶ 38–39.  Moreover, the Complaint does not provide any basis for asserting that the Bank's use of BUFC's personal property, if it occurred, entitles BUFC to relief against the Bank.  And, as with the other claims, Claim G does not provide any

- 14 -

damages valuation.  Complaint ¶ 41.  Thus, Claim G also fails to meet the pleading requirements of Rule 8 and should, therefore, be dismissed.

>        8.      Claim "H":  PAC (Complaint ¶¶ 42–45)

While Claim H does identify the "BankUnited Financial Corporation Political Action Committee," it also fails to provide any information regarding the other PACs for which BUFC has asserted claims, nor does the Complaint explain how the PACs can be "connected to" BUFC such that BUFC is entitled to the funds held in these PACs.  Moreover, the Complaint provides no basis for why this Claim is asserted against the Bank, as it does not even assert that the PACs in question were ever in the possession of the Bank or are currently in the possession of the FDIC-R.  Accordingly, Claim H falls short of the elements under 11 U.S.C. § 542 for turnover of property to the estate, since it is not alleged that the FDIC-R is "in possession, custody, or control . . . of property that the trustee may use, sell, or lease . . . ."  Claim H is insufficient to meet the pleading requirements of Rule 8 and should, therefore, be dismissed.

>        9.      Claim "I":  Employee Benefits (Complaint ¶¶ 46-49)

Claim I is characteristically speculative.  First, it does not identify any specific employee benefit plans or which of the Plaintiffs's employees were involved, referring only to "various" such plans in which "certain employees of BUFC and/or BUFS participated." Second, it does not provide sufficient information to judge the nature of and obligations arising under whatever employee benefits plans may be at issue.  Third, it does not even assert liability on the part of a Plaintiff, much less identify which Plaintiff (vaguely referencing funding responsibilities "for which BUFC *and/or* BUFS is or *may be* liable" (Complaint ¶ 46; emphasis added).  Fourth, even if such liability existed, the Complaint states only that the Bank "may have failed to pay" it and that accordingly, the Bank "may" owe $39,600 to BUFC and/or BUFS.  Complaint ¶¶ 46-48.

MIA 362711-4.084080.0020

Thus, Claim I falls short of the pleading necessary to show that either BUFC or BUFS are plausibly entitled to relief, and the claim should be dismissed.

      10.    <u>Claim "J":  Real, Personal and Other Property Taxes</u> (Complaint ¶¶ 50-52)

At best, Claim J speculates that BUFC "may have made payments" to unidentified government entities in respect to certain real, personal and other property taxes owed by the Bank.  While such payments, if they occurred, were made in respect of the Bank's (and/or its subsidiaries') liabilities, the Complaint further speculates that BUFC "may not have received reimbursements."  Complaint ¶¶ 50-51.  Moreover, the Complaint does not provide any basis for asserting that the Bank is obligated to reimburse BUFC, in that it neglects to identify the nature of the taxes owed or any agreements under which BUFC's payments were made (<u>if</u> they were made).  And, as with the other claims, Claim J does not provide any damages valuation (Complaint ¶ 52)  Thus, Claim J is also insufficient under Rule 8 and should also be dismissed.

      11.    <u>Claim "K":  Income Tax Refunds</u> (Complaint ¶¶ 53-58)

While Claim K alleges that the Bank is liable to BUFC for certain amounts under an Income Tax Allocation Agreement, there are no transactions identified, no time periods, no identification of the circumstances of such payments, no indication of BUFC's obligations or whether it had met them, and no indication of what amounts would be owed.  Complaint ¶ 53.  Like the preceding claims, this speculates that the Bank "may" owe income tax payables "to any or all of the Plaintiffs," even though the Plaintiffs other than BUFC, are not even alleged to be part of the agreement at issue.  And as with the other claims, Claim K does not provide any damages valuation; indeed, it admits that the Bank and the FDIC-R may not have even received refunds which would be due to the Plaintiffs under the agreement.  Complaint ¶ 56-57 ("To the extent that BUFSB received any income tax refunds . . .").  Thus, Claim K fails to meet the pleading requirements of Rule 8 and should be dismissed.

12.    Claim "L":  Employee, Officer, and Director Claims (Complaint ¶¶ 59-61)

Claim L fails to identify which of the Plaintiffs have a claim, states that the Plaintiffs "may have paid compensation to employees, officers, and directors" of the Bank, and states that such payments were for services which "may" have primarily or solely benefited the Bank. Complaint ¶ 59.  Moreover, the Complaint fails to describe the circumstances of such payments, if they occurred, and any agreements under which such payments may have been made.  Beyond conclusory statements, the Complaint does not provide any basis for asserting that the Plaintiffs are entitled to reimbursement for these payments which might have been made.  Complaint ¶ 60. Finally, Claim L contains no allegation or estimate of damages.  Accordingly, Plaintiffs have not demonstrated any plausible entitlement to relief.  Claim L is insufficient to meet the pleading requirements of Rule 8 and should, therefore, be dismissed.

13.    Claim "M":  Professional Fee Claims (Complaint ¶¶ 62-63)

Claim M contains nothing more than the naked allegation that BUFC paid professional fees to various categories of professionals ("attorneys, accountants, investment advisors") as well as "other outside professionals," none of whom are identified, much less the nature, amount or timing of the alleged service or payments, or whether such payments were made in accordance with any related written agreements, or pursuant to any invoices.  Nor does it provide any basis for asserting that BUFC is entitled to reimbursement for any of these payments, other than a bare, conclusory assertion that BUFC is so entitled.  And no amount or estimate of damages is provided.  There is simply now way for any defendant to respond to such amorphous claims. Thus, Claim M fails to meet the pleading requirements of Rule 8 and should be dismissed. [7]

---

[7] Any plausibility of claims of this nature is absent, too, in circumstances involving a parent and wholly owned subsidiary, where the presumption is that any such sharing of professional services would have been of long standing and accounted for in intra-company accounts maintained by the parent.

- 17 -

14.     <u>Claim "N": Intercompany Advances</u> (Complaint ¶¶ 64-70)

Claim N only provides a bare conclusory statement as to the basis for recovery—namely that the parties had an "intention and understanding" that the intercompany transfers at issue would be repaid by the Bank.  Complaint ¶ 67.  In particular, it does not allege the nature of this "intention and understanding," the circumstances of such transfers, the conditions for repayment, or whether these conditions had been met.   More importantly, these intentions and understandings are evidently not in writing and thus are not valid against FDIC-R.  <u>See</u> 12 U.S.C. §§ 1823(e)(1)(A); <u>see also</u> 1821(d)(9)(A).   Section 1823(e) is the statutory implementation of the <u>D'Oench Duhme</u> doctrine, created "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets . . . .  Focusing solely on documents in the bank's files allows the FDIC to assess the value of assets held by banks it insures or acquires in its corporate capacity."  <u>FDIC v. Zook Bros. Constr. Co.</u>, 973 F.2d 1448, 1451 (9th Cir. 1992).  As FDIC-R could not examine "intention and understanding" when evaluating the worth of the Bank, such "agreements" are not enforceable against FDIC-R. Additionally, Claim N asserts that additional intercompany transfers "may" have been made, with no explanation whatever, and without providing an estimate of any damages stemming from such transfers.  Complaint ¶¶ 69-70.  Accordingly, Claim N fails to plead a basis upon which Plaintiffs can plausibly recover against the Bank, and it should therefore be dismissed.

15.     <u>Claim "O": Services</u> (Complaint ¶¶ 71-73)

Claim O is bereft of details, failing to identify which Plaintiffs have provided services to the Bank, what services the applicable Plaintiff(s) provided, when they were provided, whether they were provided under any written (or non-written) agreement, or what the agreed amounts (or reasonable value or invoiced amounts) were supposedly attributable to the services allegedly provided, and in what amount Plaintiffs (or whichever of them holds any claims) are seeking

- 18 -

recovery.  This is yet another of the many unadorned accusations in this Complaint that the-defendant-unlawfully-hurt-me, plainly insufficient and falling far short of the pleading necessary to show that the Plaintiffs (or any of them) are plausibly entitled to relief.  Accordingly, Claim O should also be dismissed.

16.  <u>Claim "P": Fraudulent Transfers and Preferences</u> (Complaint ¶¶ 74-118)

Claim P, to the extent it can be understood through its prolixity, contains perhaps the most implausible allegations in the entire pleading, although the apparent bulk of its claims.  The Plaintiffs appear to be challenging hundreds of millions of dollars of capital infusions made by the bank holding company, parent/Debtor BUFC, to its wholly owned bank, BUFSB, at one point allegedly "[a]t the insistence of the OTS" (Complaint ¶84).  Of course, if such capital was contributed in response to any written direction from OTS (the Complaint doesn't say, either way), it would be statutorily exempt from suit under 12 U.S.C. § 1821(u) for fraudulent transfer or preference.[8]  But the mere allegation by a parent company that its investment of capital in a wholly owned subsidiary is somehow "fraudulent" would seem implausible because the value of investment inures to the benefit of the parent company.  Said another way, a capital investment in a wholly owned subsidiary does not diminish the value of the parent company (and therefore the value of its stock).  And even if the bank holding company's capital investment in its own bank, in its effort to save it from failure, could be deemed fraudulent, it would put the holding company itself in the position of asking this Court for relief from the consequences of a fraud in which the holding company itself engaged.

---

[8] Under 12 U.S.C. §1821(u) ("Limitation on claims"), "(1)  In general.  No person may bring a claim against any Federal banking agency (including in its capacity as . . . receiver) for the return of assets of an affiliate . . . transferred to . . . an insured depository institution by such affiliate or controlling shareholder of the insured depository institution, or a claim against such Federal banking agency for monetary damages or other legal or equitable relief in connection with such transfer, if at the time of the transfer – (A) the insured depository institution is subject to any direction issued in writing by a Federal banking agency to increase its capital . . . ."

MIA 362711-4.084080.0020

Claim P also contains allegations seemingly against FDIC corporate, which is <u>not</u> a party to this action, having been sued solely in its capacity as receiver, and only after the bank's failure and closure by OTS. Thus, suggestions that FDIC may have induced challenged transfers long before FDIC-R's appointment (<u>see</u> Complaint ¶80) ("…the FDIC or the OTS induced BUFC to make on or more transfers …") make no sense, and assertions that "FDIC-Corporate" may be obligated for payment of Plaintiffs' fraudulent transfer claims (Complaint ¶118) simply have no place here.

And, finally, Claim P appears, at least in part, to seek relief for allegedly voidable preferential transfers under the Bankruptcy Code, although *exclusive* jurisdiction for the claims asserted here falls under Title 12. <u>See</u> 12 U.S.C. §1821(d)(6).

In any event, under no analysis of fraudulent transfer or voidable preference claims (even if Title 11 applied) can this Claim P be sustainable. As before, the allegations are nothing more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>See</u> <u>Twombly</u>, 550 U.S. at 555. <u>See</u> Complaint ¶¶ 78, 80, 81, 88, 89, 97, 99, 100, 102-116. Even with nothing more than bald, conclusory statements, Plaintiffs can still only speculate that the transfers described in Paragraphs 80 through 97 "*may* be avoidable fraudulent transfers" under federal and state bankruptcy laws (emphasis added). Likewise, Plaintiffs plead that the transfers "*may* also be void" under separate grounds, ¶ 113 (emphasis added), that the Debtors "*may* be entitled" to an equitable remedy, ¶ 114 (emphasis added), that the Bank "*may* have engaged in a conspiracy," ¶ 115 (emphasis added), or that the Bank "*may* be liable to the Debtors for indemnity," ¶ 116 (emphasis added). These claims are nothing more than speculation without any basis for a plausible entitlement to relief. Thus, Plaintiffs have not shown that they are entitled to relief.

Beyond Plaintiffs' speculation, however, Claim P, as a matter of law, does not sufficiently plead every element required under bankruptcy law, even if applicable. As stated in Rule 9(a)(2) of the Federal Rules of Civil Procedure, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Yet in pleading avoidance of fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and 544(b) (which adopts the analogous Florida law), both of which require actual intent to defraud creditors as an element, Plaintiffs plead nothing more than the element itself: that Debtors transferred funds to the Bank with actual intent to defraud creditors—without any particular facts as to the fraud allegedly committed. Complaint ¶¶ 107, 109.

When pleading a constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), Plaintiffs state that BUFC, as the parent corporation making a transfer, did not receive equivalent value. Complaint ¶ 108. The Bankruptcy Code, however, does not permit the avoidance of a transfer of property of a debtor's estate where the debtor receives a corresponding benefit from the transaction, whether directly or indirectly. Rubin v. Mfrs. Hanover Tr. Co., 661 F.2d 979, 991 (2nd Cir. 1981) (discussing predecessor provision of Bankruptcy Act). "An indirect benefit to the transferor may be sufficient to establish reasonably equivalent value where the debtor and third party 'are so related or situated that they share an identity of interests because what benefits one will, in such case benefit the other to some degree.'" In re Pembroke Dev. Corp., 124 B.R. 398, 400 (Bankr. S.D.Fla. 1991) (citations omitted). In particular, "[a] loan to a subsidiary corporation will almost always confer a benefit on the parent or stockholders of the corporation since they are the indirect beneficiaries of anything of value coming to the corporation." Johnson v. First Nat'l Bank, 81 B.R. 87, 89 (Bankr. N.D.Fla. 1987). See In re Royal Crown Bottlers of North Alabama, Inc., 23 B.R. 28, 30 (Bankr. N.D.Ala. 1982) ("[T]he passing to a subsidiary of the consideration for a transfer by a debtor-parent may be presumed to be

- 21 -

substantial, because the subsidiary corporation is an asset of the parent corporation, and what benefits the asset will ordinarily accrue to the benefit of its owner."). A capital infusion to a wholly owned subsidiary, by definition, increases the value of the parent's capital.

Thus, "transfers to a solvent subsidiary are considered to be for reasonably equivalent value because, since the parent is the sole stockholder of the subsidiary corporation, any benefit received by the subsidiary is also a benefit to the parent." Branch v. F.D.I.C., 825 F.Supp. 384, 399-400 (D.Mass. 1993). The district court in Branch found such transfers to be subject to a rebuttable presumption that reasonably equivalent value was received. Branch, 825 F.Supp. at 400. As alleged by Plaintiffs, BUFC was the sole parent of the Bank, directly or indirectly owning 100% of the Bank's capital stock at all relevant times. Complaint ¶ 75. Moreover, the Complaint makes no allegation that the Bank was insolvent at the time of the transfers.[9] Accordingly, the transfers made from the parent, BUFC, to its subsidiary, the Bank, are presumed to have been for reasonably equivalent value—a presumption that Plaintiffs have made no allegations to rebut.

Plaintiffs' claims under 11 U.S.C. § 547(b) allege that the certain payments to creditors should be avoided. Complaint ¶¶ 110-111. However, Plaintiffs never allege that the Bank is an antecedent creditor of the Plaintiffs when it allegedly received transfers from Plaintiffs. Accordingly, Plaintiffs' allegations fail to plead a preferential transfer under § 547(b). Moreover, under § 547(c)(1), transfers to creditors may not be avoided where the debtor receives new value for the transfer. As described above, BUFC, as the parent of the Bank, received new value for its transfers to the Bank.

---

[9] The allegations of insolvency, albeit extremely vague, relate to the Plaintiffs, not the Bank. See e.g., Complaint ¶80 (". . . the Debtors were insolvent or were rendered insolvent or had unreasonably small capital and/or had incurred debts beyond their respective ability to pay . . .") (emphasis added).

Claim P also seeks the return of payments allegedly made to the Bank, as described in Claims M, N, and O.  Complaint ¶¶ 86-87, 95-96.  These assertions should be dismissed for the same reasons Claims M, N, and O should be dismissed, as discussed above.  Finally, to the extent that Paragraphs 117 and 118 assert claims against FDIC-Corporate, those claims must be dismissed – or stricken – because FDIC-Corporate is not a party to these proceedings.

17.    Claim "Q":  Indemnification, Contribution, and Reimbursement (Cplt ¶¶ 119-121)

Claim Q asserts vague, contingent, speculative claims for indemnification for claims that *may* someday, or *may* already have been made against one or more of the Plaintiffs, related to unidentified matters that "include" four specified ones.  Yet even in the specified matters there is no existing litigable claim pled.

> In the first matter, a class action complaint referred to in Complaint ¶120(a), Plaintiffs' allege that the defendants (not any of the Plaintiffs) "may have demanded indemnification from Plaintiffs . . . for which Plaintiffs may have provided a limited indemnification …." [Emphasis added.]

> In the second matter, relating to a demand letter seeking money from "Plaintiffs" (without identification of which), referred to in Complaint ¶120(b), Plaintiffs speculate that there might be allegations relating to acts of the Bank (though no such acts are identified) and claim a right to indemnification (without specifying the basis asserted for such liability).

> Allegations as to the third and fourth matters are substantially the same (see Complaint ¶¶ 120(c) and(d)) – suits against unidentified Plaintiffs which may or may not relate to acts or omissions by the Bank, and with no basis asserted for liability.

Claim Q is thus for damages not identified specifically to any individual Plaintiff, damages that have not yet been suffered, may never be suffered, and even if they do someday, for which the Bank may never be responsible to the injured Plaintiff.  Plaintiffs have failed to plead any facts sufficient to obtain relief, much less any plausible claim.  Claim Q, too, should be dismissed.

18.    Claim "R":  Other Amounts Due (Complaint ¶¶ 122-123)

Claim R presents nothing more than the mere speculation that the Plaintiffs "may have other claims" against the Bank or its subsidiaries.  Complaint ¶ 122.  It does not identify or

- 23 -

describe these claims in any way, nor does it provide an estimate as to the damages incurred. Complaint ¶ 123.  Accordingly, Claim R should be dismissed.

19.    <u>Claim "S":  Administrative Claims</u> (Complaint ¶¶ 124-125)

Claim S was not a claim presented first in the Receivership (<u>compare</u> Claim S in the Complaint with the attached POC, which ends with Claim R), and thus this claim must be dismissed for failure to exhaust administrative remedies, the period for submission of which has expired.  <u>See</u> <u>McMillian v. FDIC</u>, 81 F.3d 1041, 1045 (11th Cir. 1996) (district court lacked jurisdiction to hear employee's claim for severance against failed bank because employee failed to exhaust the administrative remedies established under FIRREA); <u>Tri-State Hotels, Inc. v. FDIC</u>, 79 F.3d 707 (8th Cir. 1996) (debtor's action against failed bank was barred where debtor did not exhaust the administrative remedies provided under section 1821 of FIRREA).

However, even had these "Administrative Claims" been previously presented, they are legally insufficient, merely speculating that BUFC "may have paid or become liable" for certain administrative costs and expenses that inured to the Bank's benefit.  Aside from this single, vague description, Plaintiffs do not identify what these services were or the circumstances under which they were provided.  Plaintiffs do not state any basis under which they could plausibly be entitled to the recovery of these administrative claims, if they were paid at all.  Finally, Plaintiffs have failed to provide even an estimate as to the damages related to these administrative claims. Accordingly, Claim S should also be dismissed.

## POINT III

### COUNT III FAILS TO STATE A CLAIM
### UPON WHICH RELIEF CAN BE GRANTED

Count III of the Complaint ("Demand for Accounting") pleads only a legal conclusion of entitlement, but pleads no facts, among the 131 allegations incorporated by reference in ¶139, to support that conclusion.

Moreover, accounting is an equitable claim, and 12 U.S.C. §1821(j) ("Limitation on court action") provides: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." There is no provision of Section 1821 which authorizes suit for any accounting, and requiring such would surely "affect the exercise" of the FDIC-R's functions as receiver. See Bank of American National Association v. Colonial Bank, 604 F.3d 1239 (11th Cir. 2010).

As a matter of law, the FDIC-R's accounting responsibilities are set forth exclusively in Title 12, specifically, in 12 U.S.C.§1821(d)(15) ("Accounting and recordkeeping requirements"), which requires, in subdivision (C): "Any report prepared pursuant to subparagraph (B) shall be made available by the Corporation upon request to any shareholder of the depository institution for which the Corporation was appointed . . . receiver . . . ." This is the only "accounting" to which Plaintiffs are entitled. They have not, however, sought in their Complaint to enforce this specific (and only) obligation, and they have not alleged in their Complaint any facts to establish any failure by the FDIC-R to comply with this requirement, even if there were recourse to the courts for enforcement by Plaintiffs or any of them.[10] Count III must, therefore, be dismissed.

---

[10] This issue has been addressed only in the context of complaints challenging the sufficiency of reports issued by FDIC-R. The Third Circuit found no private right of enforcement of §1821(d)(15) under the Cort factors in Hindes v. F.D.I.C., 137 F.3d 148, 171-72 (3d Cir. 1998); the Ninth Circuit decided otherwise in First Pacific Bancorp v.

(continued...)

MIA 362711-4.084080.0020

## POINT IV

## COUNT IV FAILS TO STATE A CLAIM
## UPON WHICH RELIEF CAN BE GRANTED

Count IV demands a meeting of the Bank's shareholders to elect a successor agent, premised upon 12 U.S.C. § 197(a), which, on its face, applies *only* to receivership of national banks. The section begins with a clause that expressly limits its applicability to such banks:

> Whenever any national <u>banking association</u> shall have been or shall be placed in the hands of a receiver . . .

<u>Id.</u> (emphasis added). Indeed, Section 197 is part of Chapter 2 of Title 12, applicable to the National Bank Act.

The Bank here, however, as alleged at the outset of the Complaint, is not a national banking association, but "a federally chartered savings and Loan association." Complaint, ¶3. Accordingly, 12 U.S.C. § 197(a) is inapplicable here.

Further, Section 1821(d)(2)(A) expressly provides that the FDIC, as conservator or receiver, and by operation of law, "succeed[s] to – (1) all rights, titles and powers, and the privileges of the insured depository institution, and of any stockholder . . . of such institution and the assets of the institution . . . ." Thus, the Plaintiffs have no standing to demand the relief sought because the FDIC has succeeded to the rights of the shareholder of the Bank.

---

<u>Helfer</u>, 224 F.3d 1117, 1126-27 (9th Cir. 2000), although expressly stating that enforcement of the statutory duty "does not impose an additional duty on the FDIC, but rather ensures that the FDIC fulfills the obligations already imposed by Congress." <u>Id.</u>, at 1127. The Eleventh Circuit has not ruled on the issue. It is premature here, however, where the cause of action is a more broadly framed common law accounting claim and there are no allegations that the FDIC-R has failed to comply with §1821(d)(15), nor relief requested properly limited to the statutory obligation.

Because Count IV seeks relief under a statute which is plainly inapplicable here, and because the Plaintiffs have no standing to demand such relief as the FDIC has succeeded to the rights, titles and powers of the Bank's shareholders, this count, too, must be dismissed.[11]

## POINT V

### ANY SURVIVING CLAIM
### WOULD HAVE TO BE RE-PLED

For the foregoing reasons, the FDIC-R contends that the Complaint should be dismissed, in its entirety, as a matter of law.  Even if there were surviving claims, however, such claims would, at a minimum, have to be re-pled to meet the requirements of Federal Rule 10(b):

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence — and each defense other than a denial — must be stated in a separate count or defense.

In Anderson v. Dist. Bd. of Tr.s of Cent. Fla. Comm. College, 77 F.3d 364 (11th Cir. 1996), where "[t]he first twenty-four paragraphs of the complaint contain[ed] allegations of fact . . . adopted in full by all six counts" and thus where, for example, "allegations of fact that may be material to a determination of count one, but not count four, [but] are nonetheless made a part of count four," the court found the complaint "a perfect example of 'shotgun' pleading" not permitted under the Federal Rules of Civil Procedure.  Id., 77 F.3d at 365-66.  The Eleventh Circuit held that Rule 10(b) requires that "each claim for relief [be stated] in a separate count . . . and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading."  Id.

---

[11] Even if, arguendo, section 197 were applicable here, the Plaintiffs would have to meet the express conditions of this section.  Plaintiffs do not, and could not plausibly assert, that those conditions have been met. The statute requires that payment have been made, in full, "to each and every creditor of such association whose claim or claims as such creditor shall have been proved or allowed" and that all expenses of the receivership are also paid in full. This has not been alleged here and plainly could not, in good faith, be alleged.

The problems with the "shotgun" pleading in <u>Anderson</u> are fully replicated here, where the 131 allegations of the first 27 pages of the Complaint are incorporated, wholesale, in each of the four separately alleged Counts, at pages 27-29, and where each of Counts I and II, in particular, seek, in a single count, a judgment based upon 19 distinct categories of claims, each of those categories encompassing any number of .separate transactions or occurrences, each of which, under Rule 10(b), belongs in a separate count.

In <u>Anderson</u>, the Eleventh Circuit found this defect of sufficient severity to state that the lower court, even after an answer had been filed, should have acted *sua sponte* and "should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement" under Rule 12(e). <u>Id.</u>, at 367, n. 5.

To the extent any part of the Complaint here should survive dismissal on the merits it must be re-pled to conform to the requirements of Rule 10(b).

## CONCLUSION

The Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted.  However, to the extent that any claim remains, it should be stricken and the Plaintiffs required to file a more definite statement in conformity to the Federal Rules of Civil Procedure.

MIA 362711-4.084080.0020

Dated:  July 6, 2010

Of Counsel:

McDERMOTT WILL & EMERY LLP

Kathryn R. Norcross
Senior Counsel
*knorcross@fdic.gov*
Sonya L. Levine
Counsel-Legal Division
*slevine@fdic.gov*
FEDERAL DEPOSIT INSURANCE
CORPORATION
Legal Division
3501 Fairfax Drive, VS-D-
Arlington, VA  22226
(703) 562-2783

By:  */s/ Bruce J. Berman*
    Bruce J. Berman (Fla. Bar # 159280)
    *bberman@mwe.com*
    201 S. Biscayne Blvd., Suite 2200
    Miami, FL 33131-4336
    Tel:  305.358.3500 / Fax:  305.347.6500
    - and -
    Geoffrey T. Raicht (pro hac vice
      application to be submitted)
    *graicht@mwe.com*
    340 Madison Avenue
    New York, New York 10173-1922
    Tel:  212.547.5400 / Fax:  212.547.5444

*Attorneys for Defendant*
*FEDERAL DEPOSIT INSURANCE CORPORATION*
*as Receiver for BankUnited FSB*

## CERTIFICATE OF SERVICE

    I hereby certify that on July 6, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List, either via transmission of Notices of Electronic Filing generated by CM/ECF or by first class U.S. mail on those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By:   /s/ Bruce J. Berman
            Bruce J. Berman

- 29 -

## Service List for USDC Case 20-cv-21307-PCH

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case:

**Jacqueline Becerra** on behalf of Plaintiffs
becerraj@gtlaw.com,orizondol@gtlaw.com,MIALitDock@gtlaw.com

**Mark David Bloom** on behalf of Plaintiffs
bloomm@gtlaw.com,miaecfbky@gtlaw.com,phillipsj@gtlaw.com,MiaLitDock@gtlaw.com

**Scott M. Grossman** on behalf of Plaintiffs
grossmansm@gtlaw.com,miaecfbky@gtlaw.com,phillipsj@gtlaw.com,MiaLitDock@gtlaw.com

### Manual Notice List

The following is the list of parties who are not on the list to receive e-mail notice/service for this case, and are therefore being served by first class U.S. Mail, postage prepaid:

(no manual recipients)

MIA 362711-4.084080.0020