**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NOS. 10-CV-21307-HUCK & 10-CV-22343-HUCK**

BANKUNITED FINANCIAL CORPORATION,
BANKUNITED FINANCIAL SERVICES, INC.,
CRE AMERICA CORPORATION, and BU
REALTY CORPORATION,

               Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, in its capacity as
Receiver of BankUnited, FSB,

               Defendant.

_____/

**ORDER**

    Within the last two years, the world has experienced one of the worst banking crises in history. During that time, some 229 banks failed in the United States. These two cases, which are addressed in a single order due to substantial factual and legal overlap, present both novel and routine issues arising out of the failure of one of those banks—BankUnited, FSB. Case No. 10-22343 (the Bankruptcy Court Action) is before the Court on the FDIC Receiver's Motion to Withdraw Reference (D.E. # 1). Case No. 10-21307 (the District Court Action) is before the Court on the Plaintiffs' Motion for Summary Judgment as to Count I of Complaint (D.E. # 8) and the FDIC Receiver's Motion to Dismiss the Complaint (D.E. # 17). For the following reasons, the Motion to Withdraw Reference is granted in part and denied in part, the Motion for Summary Judgment is denied, and the Motion to Dismiss is denied without prejudice.

**FACTS**

**A.  BankUnited, FSB Fails**

    On May 21, 2009, the Office of Thrift Supervision closed BankUnited, FSB and appointed the Federal Deposit Insurance Corporation as its receiver. The following day, BankUnited, FSB's parent holding company, BankUnited Financial Corporation, together with two additional of that parent's subsidiaries—BankUnited Financial Services, Inc.

and CRE America Corporation—filed for protection under Chapter 11 of the Bankruptcy Code.  Another subsidiary, BU Realty Corporation, did not file for bankruptcy protection but is named as a plaintiff in these proceedings.  The following chart summarizes the status of each of the entities in these matters:

| Entity | Status | Case Role |
|---|---|---|
| BankUnited, FSB | In Receivership | |
| FDIC | Receiver for BankUnited, FSB | Defendant |
| BankUnited Financial Corporation | Chapter 11 Debtors | Plaintiffs |
| BankUnited Financial Services, Inc. | | |
| CRE America Corporation | | |
| BU Realty Corporation | Non-Debtor Affiliate | |

**B.  Receivership Files Claims Against Debtors**

On November 16, 2009, the Receivership filed identical but separate proofs of claim in each of the Debtors' Chapter 11 cases for an amount in excess of $4.9 billion. This figure represents amounts that the Receivership believes may be owing to it under a tax sharing agreement among BankUnited, FSB and the Debtors, as well as capital maintenance obligations, insurance proceeds and premium refunds, and claims based on tort and fraudulent transfers.

**C.  The District and Bankruptcy Court Actions**

As part of the receivership administrative process, the FDIC Receiver set August 27, 2009 as the last day for potential claimants to file claims against the Receivership. On that day, the Chapter 11 Debtors and their non-debtor affiliate BU Realty Corporation (together, the "Plaintiffs") filed claims against the Receivership totaling $415 million. These claims include amounts that the Plaintiffs believe may be owing to them by BankUnited, FSB for use of real property, unpaid fees and commissions, usurped enterprise value, intellectual property use, customer list use, guaranties, artwork, political action committees, employee benefit contributions, taxes, income tax refunds, employee claims, professional expenses, intercompany advances, services rendered, fraudulent transfers and preferences, and other items.  Critical to resolution of the principal interpretive issue in this matter, the FDIC Receiver failed to determine whether to allow or disallow the claims within the 180-day period established by Title 12 of the United States Code, which governs savings associations and savings and loan holding companies.  Upon expiration of the 180-day period, the Plaintiffs exercised their rights

2

under Title 12 by filing two substantially similar suits against the Receivership: the District Court Action, filed in this Court on April 22, 2010, and the Bankruptcy Court Action, filed on April 21, 2010 as an adversary proceeding in the Debtors' Chapter 11 cases. Neither party seeks a jury trial in the Bankruptcy Court Action.

There are essentially two significant differences between the Actions. First, only the District Court Action seeks a determination that the Plaintiffs' claims against the Receivership must be allowed because the FDIC Receiver failed to disallow them within the established 180-day period. Second, only the Bankruptcy Court Action seeks a determination that the Receivership's claims against the Debtors in their Chapter 11 cases should be disallowed. The following chart summarizes these and other, more minor, differences:

| Cause of Action | District Court Action | Bankruptcy Court Action |
|---|---|---|
| Determination that Plaintiffs' claims against the Receivership are allowed due to the FDIC Receiver's failure to disallow or give notice within 180 days | X | |
| Determination of the validity of each of Plaintiffs' claims against the Receivership | | |
| Use of Real Property | X | X |
| Unpaid Fees and Commissions | X | X |
| Enterprise Value | X | X |
| Intellectual Property Use | X | X |
| Customer List Use | X | X |
| Guaranties | X | X |
| Artwork/Other Personal Property | X | X |
| Political Action Committee | X | X |
| Employee Benefits | X | X |
| Real, Personal, and Other Property Taxes | X | X |
| Income Tax Refunds | X | X |
| Employee, Officer & Director Claims | X | X |
| Professional Fee Claims | X | X |
| Intercompany Advances | X | X |
| Services | X | X |
| Fraudulent Transfers and Preferences | X | X |
| Indemnification, Contribution and Reimbursement for Claims Against Debtors' Estates | X | X |
| Other Amounts Due | X | X |

| Cause of Action | District Court Action | Bankruptcy Court Action |
|---|---|---|
| Demand for an Accounting | X | |
| Demand Meeting of BankUnited, FSB Shareholders to Elect Successor Agent | X[1] | |
| Objection to the Receivership's claims against the Debtors in their Chapter 11 cases | | X |

## ANALYSIS

### A. The Bankruptcy Court Action

By its current motion, the FDIC Receiver seeks to withdraw reference of the Bankruptcy Court Action, thereby removing it to this Court, on the ground that the Bankruptcy Court Action, involving the statutory framework of Title 12, would require significant consideration and potential application of non-bankruptcy law. The Plaintiffs, however, contend that any such consideration and application would be routine, and should be undertaken in the first instance by the Bankruptcy Court.

The United States District Court for the Southern District of Florida has referred all bankruptcy matters under Title 11 of the United States Code to the District's bankruptcy judges. A district court's power to refer such matters is, however, limited by 28 U.S.C. § 157(d), which provides that a district court:

> [M]ay withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Section 157(d) mandates withdrawal of the reference where resolution of a party's complaint requires "substantial and material consideration" of such "other laws," that is, "when complicated interpretive issues, often of first impression, have been raised under non-Title 11 federal laws, or when there is a conflict between the bankruptcy and other federal law." *TPI Int'l Airways, Inc. v. FAA (In re TPI Int'l Airways, Inc.)*, 222 B.R. 663, 667 (S.D. Ga. 1998) (quotations omitted). Section 157(d) permits withdrawal, in the district court's discretion, for "cause shown." In making this discretionary determination,

---

[1] In their Memorandum in Opposition to Defendant's Motion to Dismiss (D.E. # 26), the Plaintiffs note their consent to dismissal of this count.

courts generally consider (1) advancing uniformity in bankruptcy administration, (2) decreasing forum shopping and confusion, (3) promoting the economical use of the parties' resources, (4) facilitating the bankruptcy process, (5) whether the claims are core or non-core, (6) whether there has been a jury demand, and (7) the prevention of delay. *See Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985); *In re TPI Int'l Airways, Inc.*, 222 B.R. at 668.

In this case, the only "complicated interpretive issue . . . of first impression" under non-bankruptcy law that may arise in the Bankruptcy Court Action (and has already arisen in the District Court Action) is whether the FDIC Receiver's failure to allow or disallow the Plaintiffs' claims within the 180-day period constitutes a deemed allowance of those claims.  The Court addresses that issue below—a holding that is binding on the Bankruptcy Court—alleviating any concerns implicating mandatory withdrawal.  The Court is not convinced by the FDIC Receiver's remaining bare assertions that various non-bankruptcy statutes, particularly Title 12 and the tax law, will require substantial and material consideration, as these assertions lack specificity and detail.  As a general matter, such issues—absent indication that they may involve substantial and material consideration—are routinely adjudicated by bankruptcy courts.  *See, e.g.*, *In re Perdue*, No. 1:04 MC 00073 (PCE), 2010 WL 907951, *4 (N.D. Ohio March 11, 2010) (refusing to withdraw reference in matter involving application of Title 12); *In re Sahni*, 227 B.R. 748, 751 (D. Kan. 1998) (concluding that application of the fraudulent conveyance provision of Title 12 does not require withdrawal); *Resolution Trust Corp. v. Overland Park Fin. Corp.*, 182 B.R. 865, 870 (D. Kan. 1995) ("[The bankruptcy] court is indeed an appropriate forum in which to determine the competing rights of parties in a tax refund resulting from a consolidated return.").  Accordingly, withdrawal is not mandatory.  Nor is permissive withdrawal appropriate.  Armed with the Court's ruling on the single issue that would otherwise merit mandatory withdrawal, the Bankruptcy Court—which has presided over the Chapter 11 cases since their inception–is at this juncture the most efficient and appropriate forum in which to resolve the Parties' claims.

The FDIC Receiver argues that even if withdrawal is not mandatory, and won't be permissively granted, the Bankruptcy Court is without jurisdiction to adjudicate claims filed against the Receivership.  According to 12 U.S.C. § 1821(d)(6),

> the claimant may request administrative review of the claim . . . or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

The FDIC Receiver contends that this provision should be read as conferring jurisdiction on the district court to the exclusion of the bankruptcy (or any other) court. The Court disagrees. The bankruptcy court is an adjunct of the district court. Absent express contrary indication, a statutory grant of jurisdiction to a district court does not divest the bankruptcy court of coextensive referral jurisdiction. *See Browning v. Levy*, 283 F.3d 761, 779 (6th Cir. 2002) ("[E]xclusive jurisdiction of the district courts over certain ERISA claims does not preclude such claims from being brought in bankruptcy proceedings, because the bankruptcy court is not a free standing court, but rather a unit of the district court.") (quotations omitted). The Eleventh Circuit has recognized this principle in the context of section 1821. *See Emerald Int'l Invs., Inc. v. Fed. Deposit Ins. Corp. (In re Emerald Int'l Invs., Inc.)*, 190 B.R. 701, 704 (Bankr. S.D. Fla. 1995) ("[T]he Eleventh Circuit remanded the § 1821(d)(6)(A) proceedings to be heard by the Bankruptcy Court. Accordingly, the Bankruptcy Court has been directed to determine a matter traditionally heard by the District Courts."). *See also In re Parker N. Am. Corp.*, 24 F.3d 1145, 1150 (9th Cir. 1994) ("Claimants must exhaust [§ 1821] administrative remedies before seeking district *or bankruptcy court review*.") (emphasis added).

Accordingly, with the exception of a single issue—the effect of the FDIC Receiver's failure to allow or disallow the Plaintiffs' claims within 180 days—the Court will not withdraw reference of the Bankruptcy Court Action.

**B. The District Court Action**

**1. Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment as to the first count of the District Court Complaint. That is, they seek this Court's determination that the $415 million in claims filed against the Receivership are deemed allowed based on the FDIC Receiver's failure to disallow the claims within 180 days.

Upon its appointment, the FDIC Receiver is required to publish notice that the failed institution's creditors must file claims with the FDIC Receiver by a specified date

not less than ninety days after the date of publication. 12 U.S.C. § 1821(d)(3)(B). The FDIC Receiver is also required to mail notice to all known creditors of the failed institution. *Id.* § 1821(d)(3)(C).  The FDIC Receiver has 180 days from the date a claim is filed to allow or disallow it.  "Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation *shall* determine whether to allow or disallow the claim and *shall* notify the claimant of any determination with respect to such claim."  *Id.* § 1821(d)(5)(A)(i) (emphasis added).  Claimants have sixty days from the date of disallowance, or from the expiration of the 180-day administrative decision deadline, within which to seek judicial review in an appropriate United States district court.  *Id.* § 1821(d)(6)(A).  A claimant's failure to seek review within the applicable period results in the claim being "deemed to be disallowed." *Id.* § 1821(d)(6)(B).  Notably, while the consequence of a claimant's failure to meet the requirements of the statute are expressly noted, no concomitant provision exists regarding the FDIC Receiver's failure to do so.

The crux of this dispute, which is the subject of virtually no judicial or scholarly analysis, is the precise effect of the FDIC Receiver's failure to disallow a claim within the 180-day period.  The Plaintiffs argue that use of "shall"—a term with mandatory denotation—would be superfluous if failure to make the statutorily commanded determination (and provide notice to the claimant) merely resulted in a deemed disallowance of the claim.  What inducement, after all, would the FDIC Receiver have to comply with this statutory duty if default carried no penalty but, in fact, the opposite—a favorable inference that a claim was disallowed?  The FDIC Receiver, in turn, contends that failure to make a determination within the 180-day period, at the very least, does not result in allowance of the claim.

The FDIC Receiver advances the following argument in favor its interpretation:

> Elementary principles of statutory construction compel the conclusion that the failure of the receiver to act within the 180 days must be deemed a disallowance of the claim . . . . [as] the statutory provision for counting the 60 days from the end of the 180-day period would otherwise have no meaning, and statutes must be construed, whenever possible, so that all of their provisions have meaning.

Unfortunately (and unhelpfully), the FDIC Receiver does not provide any further detail in support of this contention.  How, exactly, would the Plaintiffs' interpretation of "shall"

render the sixty-day provision meaningless?  Perhaps the argument is that the date on which the 180-day period expires—as opposed to the date on which a claim is disallowed—only bears significance if one assumes that the expiration of the 180-day period—without any action on the FDIC Receiver's part—triggers the claimant's sixty-day appeal period by effecting a disallowance of its claim.  This argument has some logical appeal.  Why would expiration of the 180-day period trigger the claimant's right to *review* if there were no claim disallowance to be reviewed?  The argument is bolstered by consideration of the subsection of the statute dealing with a claimant's remedies.  That subsection is titled "Provision for agency review or judicial determination," and provides that upon disallowance or expiration of the 180-day period "the claimant may request administrative review of the claim . . . or file suit on such claim."   12 U.S.C. § 1821(d)(6).  A claimant, it seems, would only need to seek "agency review" or "judicial determination" if the claim were disallowed (in some measure), either expressly or by default.  If the Plaintiffs' interpretation were correct, the statute should provide for judicial "enforcement," not "determination," of the purportedly deemed-allowed-by-default claim.

The Plaintiffs respond by reiterating that the FDIC Receiver's interpretation essentially emasculates "shall" by depriving it of tooth.  Additionally, the Plaintiffs note that:

> [I]f Congress had intended for a failure by the FDIC-Receiver to act on a claim within the 180-day claims-consideration period to have the same effect as a decision to disallow the claim, it could easily have included language to this effect . . . . Congress did precisely that in § 210(a)(3)(A) of the recently enacted Dodd-Frank Act, which contains language closely resembling that of § 1821(d)(5)(A).

Section 210(a)(3)(A) of the Dodd-Frank Act contains the following sentence: "[f]ailure to notify the claimant of any disallowance within the [180-day] time period . . . shall be deemed to be a disallowance of such claim, and the claimant may file or continue an action in court."

The Court is thus presented with a state of complex and somewhat conflicting circumstances: (1) purportedly mandatory language contained in a statute directing the FDIC Receiver to act within a specified period of time; (2) no indication as to the consequence for failure to perform the mandated conduct; (3) language contained in the

title of a remedial portion of the statute implying that there is no real consequence; and (4) language contained in a recently-enacted, similar provision expressly addressing the consequence of failure to act within a specified time period.

After careful consideration, and cognizant of the reasonable interpretations that both the Plaintiffs and the FDIC Receiver have advanced, the Court concludes that the FDIC Receiver's position is most reasonable and consistent with the statutory scheme. The FDIC Receiver's failure to disallow a claim within the 180-day period prescribed by statute does not effect an allowance of the claim.  The Court rests this conclusion on two grounds.   First, this interpretation does not render "shall" toothless.   "Shall" is meaningful insofar as it triggers a claimant's appellate rights, thereby satisfying the claimant's duty to exhaust administrative remedies.  Second, the Court is loath to impose a draconian result—allowing a $415 million claim against the FDIC Receiver—in the absence of express statutory authority to do so, particularly when the same statute does in fact address the consequence of a claimant's failure to act within the specified period of time.   The Court's conclusion thus gives meaning to the term "shall" and due consideration to the statute's silence on the issue of consequence.

## 2.  The FDIC Receiver's Motion to Dismiss

In light of the Court's intention to remand the Bankruptcy Court Action and the fact that the Court has resolved the single issue calling for substantial and material application of non-bankruptcy law, the Parties' contentions regarding the sufficiency of the District Court Complaint should be addressed by the Bankruptcy Court.

## CONCLUSION

The FDIC Receiver's Motion to Withdraw Reference is GRANTED in part and DENIED in part.  It is granted insofar as the Court has withdrawn and determined the effect of the FDIC Receiver's failure to allow or disallow a claim within the 180-day period mandated by section 1821, and is denied in all other respects.

The Plaintiffs' Motion for Summary Judgment as to Count I of Complaint is DENIED.  The FDIC Receiver's Motion to Dismiss the Complaint is DENIED without prejudice to its consideration by the Bankruptcy Court.  The Parties shall be given opportunity to amend their pleadings within the Bankruptcy Court to conform to this

Order and raise any issues from the District Court Action that were not also raised in the Bankruptcy Court Action.

By separate order, the Bankruptcy Court Action will be remanded to the Bankruptcy Court, and the District Court Action will be dismissed without prejudice.

DONE and ORDERED in Chambers, Miami, Florida, August 20, 2010.

Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record